Sibyle **HUTCHINGS**, Plaintiff,

v.

**ERIE CITY AND COUNTY LIBRARY BOARD OF DIRECTORS of the Erie City and County Library Elizabeth Beckman, Dr. Joseph Scottino, Martha C. Anderson, John Enders, David P. Spalding, Tyrone Moore, Richard DeLuca, Helen Nowak, Kenneth Sivulich, Michele Ridge, Erie County, Russell D. Robison, Board of Education of the City of Erie, Walter Piotrowicz, John N. Petrus, Edmond T. Giovanelli, Thomas R. Brown, Leonard L. Locastro, Jr., Harold Shields, Anthony E. Narducci, Ed Sparaga, Geraldine Zurn, Harry Edwards, Richard Hilinski, Thomas O'Rourke, Defendants.**

Civ. A. No. 80–182 Erie.

United States District Court, W. D. Pennsylvania.

June 29, 1981.

Marilyn Wollery, Erie, Pa., for plaintiff.

John W. Beatty, Sol. for the School Dist. of the City of Erie, Richard W. Perhacs, Asst. County Sol., Will J. Schaaf, Erie, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

This is a civil rights action brought by a handicapped employee of the Erie City and County Library under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Civil Rights Act of 1866, 42 U.S.C. § 1983. The plaintiff, Sibyle Hutchings, is a Reference Librarian currently assigned to work at the main branch of the Erie City and County Library. Mrs. Hutchings suffers from dormant multiple sclerosis. As a result of this illness she is able to walk only with the assistance of leg braces and a walker. The main branch of the City and County Library is housed in a classic palazzo structure which is approximately 75 years old. As originally designed, this structure was not easily accessible to the handicapped, nor was it equipped with facilities designed specifically to accommodate the handicapped. Entry into the building could only be gained by climbing several steps, both in its portico and then to the main floor rotunda. Many of the library's facilities are located either in the basement or on the second floor of the building. These facilities were also only accessible through stairways. Plaintiff can only climb or descend the stairways with great effort and at slow speed.

On November 12, 1980, plaintiff filed a complaint with this court. In this complaint plaintiff alleged that she had been subjected to continuing discrimination at the hands of the defendants since approximately April of 1978. According to the plaintiff this discrimination took many forms, including: forcing her to work in a building which did not contain facilities designed for the handicapped; demotion of the plaintiff because of her handicap; transfer of the plaintiff to a job she was

not physically capable of performing; reprimands of the plaintiff when she protested working conditions at the library; refusal by the defendants to install handicapped facilities in the library until forced to do so by the threatened withdrawal of federal funding; and harassment of the plaintiff when she filed complaints with various administrative agencies protesting library policy. In her complaint the plaintiff asks for injunctive relief; compensatory damages for emotional distress and exacerbation of her pre-existing medical condition; and punitive damages. At all times she has continued to work at the library.

The defendants in this action have filed a consolidated motion for summary judgment. In this motion the defendants contend: (1) that the plaintiff's remedies in this case must be limited to monetary damages; (2) that Section 504 of the Rehabilitation Act of 1973 does not provide for a private right of action for damages; (3) that the plaintiff has failed to state any cause of action under the Civil Rights Act of 1866, 42 U.S.C. § 1983; (4) that some of the plaintiff's claims are barred by Pennsylvania's 2 year statute of limitation; (5) that the defendants are entitled as a matter of law to a good faith immunity defense; .(6) that any pendant tort claims raised by the plaintiff are barred by Pennsylvania's Workmen's Compensation Act.

For the reasons set forth below we are convinced that none of these contentions, singly or combined, justifies summary judgment dismissal of the plaintiff's complaint at this time. Therefore, we deny this motion.

## I.

### AVAILABILITY OF INJUNCTIVE RELIEF IN THIS CASE.

■ At the outset the defendants argue that the relief available to the plaintiff in this case should be limited exclusively to monetary damages. According to the defendants the plaintiff's prayer for injunc-

tive relief is now moot, since steps have been taken to remodel the main library facilities and make them accessible to the handicapped. We do not feel, however, that this action by the library necessarily renders the plaintiff's claim for injunctive relief moot. We, therefore, will not bar the plaintiff from seeking both equitable relief and monetary damages in this action.[1]

As we understand the plaintiff's complaint it contains two central allegations against the defendants. First it contends that the library discriminated against the plaintiff by not providing adequate physical facilities for handicapped individuals. Second, it alleges that defendants engaged in ongoing discriminatory harassment of the plaintiff solely because of her handicap. Clearly the current renovation of the main library building, when completed, will remedy some of the plaintiff's complaints regarding the lack of facilities for the handicapped. However, even if these renovations completely satisfy the complaints regarding the lack of handicapped facilities we would still allow the plaintiff to seek injunctive relief in this case. In her complaint the plaintiff alleges that she has been subjected to discriminatory harassment by her superiors. According to the plaintiff this harassment has included attempts to transfer and demote her because of her handicap. This court clearly has the authority to enjoin this type of discrimination against the handicapped. Moreover, the renovation of the library building itself in no way corrects this discriminatory conduct. Therefore, these renovations do not render moot the plaintiff's request for injunctive relief and we will allow the plaintiff to continue to seek that relief.

## II.

### AVAILABILITY OF DAMAGES UNDER § 504 OF THE REHABILITATION ACT OF 1973.

■ § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that:

> The present motion, however, does not require the resolution of this question. Therefore, we reserve this issue for some later date.

---

1. In fact, as we perceive the plaintiff's complaint, the relief sought in it is primarily equitable in nature. Therefore, we question the plaintiff's right to a jury trial in this matter.

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance...".

Although the Supreme Court has never directly addressed this issue, lower federal courts have generally concluded that this section creates an implied private right of action on behalf of the handicapped. See, e. g. *NAACP v. Medical Center Inc.*, 599 F.2d 1247 (3d Cir. 1977); *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2nd Cir. 1977); *United Handicap Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977). Accordingly it is conceded by all of the parties in this case that the plaintiff does possess a private right of action under Section 504. The defendants, however, contend that this private right of action is strictly limited to actions for injunctive relief. Therefore, the defendants argue that we must bar all claims for damages brought by the plaintiff under the Rehabilitation Act.

We disagree. In our view, the private right of action created by Section ·504 encompasses both actions for injunctive relief and actions for monetary damages. Therefore we will permit the plaintiff to pursue a damages action under this act.

In considering the defendants' position on this issue we note at the outset that the Court of Appeals for the Third Circuit has never ruled on this precise question. See *NAACP v. Medical Center, Inc.*, supra, at 1248, n. 1. However, several district courts in this circuit have, without discussion, allowed private damage actions to proceed under Section 504. See, *Stubbs v. Kline*, 463 F.Supp. 110 (W.D.Pa.1978); *Drennon v. Phila. General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977). Moreover, recently several district court decisions have expressly held that Section 504 creates a private right of action for damages. See, *Patton v. Dumpson*, 498 F.Supp. 933 (S.D.N.Y.1980); *Poole*

*v. South Plainfield Board of Education*, 490 F.Supp. 948 (D.N.J.1980). We find the rationale underlying these decisions to be persuasive. Accordingly, we adopt that rationale and hold that damages are recoverable under Section 504 of the Rehabilitation Act.

In this case we can see no sound reason for distinguishing between private actions for damages and private actions for injunctive relief. In fact, we note that such a distinction seems inconsistent with prior case law in this area. Historically, private damages actions have been recognized as an accepted remedy for civil rights violations. Such private damages actions have been permitted in civil rights cases as a remedy for constitutional infractions; See, e. g. *Paton v. Laprade*, 524 F.2d 862, 869 (3rd Cir. 1975) (First Amendment); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment); *United States ex rel. Moore v. Koelzer*, 457 F.2d 892. (3d Cir. 1972) (Fifth Amendment); *Berlin Democratic Club. v. Rumsfeld*, 410 F.Supp. 144, 161 (D.D.C.1976) (Sixth Amendment), and for violations of a wide range of statutorily created rights, See, e. g. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Suit under 42 U.S.C. § 1981); *Sullivan v. Little Hunting Park Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (Suit under 42 U.S.C. § 1982); *Gilliam v. City of Omaha*, 388 F.Supp. 842, 847 (D.Neb.) aff'd 524 F.2d 1013 (8th Cir. 1975) (Suit under Title VI); *Williams v. Matthews Co.*, 499 F.2d 819, 829 (8th Cir.); *cert. den.* 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974) (awarding actual and punitive damages under Title VIII).

The rationale behind this policy permitting the plaintiffs in civil rights action to sue for both legal and equitable relief is quite simple. The Constitution and the federal civil rights statutes have established certain federally protected rights. When one of these rights is violated, federal courts have an obligation to insure that that violation is completely redressed. To fulfill this obligation federal courts may rely upon the full panoply of remedies available to them, including in proper cases

the awarding of damages. See, *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

In this instance when Congress enacted Section 504 of the Rehabilitation Act it prohibited discrimination against the handicapped in federally funded projects. Implicit in this prohibition was the principle that handicapped individuals could bring private actions to protect their rights. Yet, there is nothing in the language or the legislative history of Section 504 which suggests that Congress expressly intended to limit these private suits to actions for injunctive relief. Therefore, we conclude that the private right of action implied under Section 504 of the Rehabilitation Act includes both damage actions and actions for injunctive relief.

In reaching this conclusion we are aware that several other district courts have rejected the proposition that Section 504 provides a private right of action for damages. See, *Miener v. Missouri*, 498 F.Supp. 944 (E.D.Mo.1980); *Boxall v. Sequoia High School District*, 464 F.Supp. 1104 (N.D.Cal. 1979) (dictum). These cases argue that the legislative history of Section 504 and considerations of public policy mandate the private actions under the Rehabilitation Act be limited to actions for injunctive relief. However, we find these arguments unpersuasive. Therefore, we refuse to adopt them in this case.

The argument that the legislative history of Section 504 bars any private right to damages is essentially two-fold. First, it is argued that a right to damages is not explicitly provided for in either the statute or the legislative history. Because damages are not explicitly mentioned we are urged to infer that damage actions were deliberately excluded. Second, it is argued that Section 504's remedial scheme is modeled after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. It is contended that since damages have been judicially denied in private Title VI actions that they should also be barred under Section 504.

We feel, however, that the legislative history of the Rehabilitation Act does not support the argument that private damage actions are prohibited under Section 504. At the outset we note that the failure of Congress expressly to provide for private damage actions under Section 504 does not necessarily mean that those actions were deliberately excluded. Quite the contrary, this congressional silence can be construed in a number of ways. For example, from Congress' silence we can just as easily infer that all forms of judicial relief, including damages, are available to private litigants under Section 504. In fact, this latter interpretation would be more consistent with the policy favoring full remedial relief for civil rights litigants. Furthermore, while we agree that the remedial scheme established in Section 504 was modeled after Title VI; See, 29 U.S.C. § 794a, we do not feel that this similarity supports the conclusion that damage actions are prohibited under Section 504. We reach this conclusion because we find no clear support in the case law for the proposition that private damage actions are barred under Title VI. Compare, *Gilliam v. City of Omaha*, supra; *Flanagan v. President and Directors of Georgetown College*, 417 F.Supp. 377 (D.C. D. of C. 1976) (allowing damage suits) with *Concerned Tenants Association v. Indian Trails Apartment*, 496 F.Supp. 522 (N.D.Ill. 1980); *Rendon v. Utah State Department of Employment Security*, 454 F.Supp. 534 (D.C.Utah, 1978) (rejecting the argument that Title VI allows for damages). In sum, then, none of the arguments based on the legislative history of Section 504 supports the position that private damage actions are barred under that Act. Moreover, we note that private damage suits are clearly allowed under 42 U.S.C. Section 1983. Since the plaintiff has pleaded a Section 1983 cause of action and since we feel that action is not subject to dismissal at this time we will allow the plaintiff to continue to seek damages in this lawsuit.

### III.

### THE PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER 42 U.S.C. SECTION 1983.

In their consolidated motion for summary judgment the defendants argue

that the plaintiff has failed to state a cause of action under 42 U.S.C. Section 1983. The defendants concede that the Civil Rights Act permits civil actions by handicapped persons based on alleged disparate treatment of the handicapped. However the defendants argue that, under the Civil Rights Act, this disparate treatment is allowable when it is shown to be rationally related to some legitimate state objective. See, *Upshur v. Love*, 474 F.Supp. 332 (D.C. Va.1979); *Cuyahoga Cty. Association for Retarded Children and Adults v. Essex*, 411 F.Supp. 46 (D.C.Ohio 1976); *Gurmankin v. Costanzo*, 411 F.Supp. 982, 992 n. 9 (E.D.Pa. 1976), *aff'd.* 556 F.2d 184 (3rd Cir. 1977). According to the defendants the only state action mentioned in the plaintiff's complaint is the defendants' delay in modifying the library's physical facilities. Defendants assert that this delay was caused by budgetary and administrative constraints. Furthermore, according to defendants these facilities are now being renovated to allow the handicapped access to the library. Therefore, the defendants contend that any delay that has occurred was rationally related to legitimate governmental objectives and does not give rise to liability under Section 1983.

We disagree. While we believe that the rational relationship test is the appropriate standard to apply to these claims, we do not feel that this standard mandates dismissal of the plaintiff's Section 1983 cause of action at this time. We believe that the defendants have misconstrued the fundamental nature of the plaintiff's complaint. Admittedly, the plaintiff does protest the library's delay in providing facilities for the handicapped. However, the gravamen of the plaintiff's complaint is that she has been discriminated against and harassed solely on the basis of her handicap. At present the defendants have not provided any explanation for these alleged acts of discrimination. Nor have they established that the alleged discrimination in fact did not occur. Until such proof is presented the plaintiff's Section 1983 claim cannot be dismissed.

## IV.

### THE STATUTE OF LIMITATIONS.

■ The plaintiff's complaint in this case was filed on November 12, 1980. In that complaint the plaintiff alleged that the defendants had been discriminating against her since April of 1978. The defendants have now moved to bar the plaintiff from bringing claims arising out of conduct occurring prior to November 12, 1978, alleging that those claims are barred by the statute of limitations.

Neither the Rehabilitation Act of 1973, nor the Civil Rights Act of 1866, contains any provisions establishing time limitations for the bringing of civil actions. Therefore, the forum state's statute of limitations governing those acts that are the most clearly analogous to the acts alleged by the plaintiff in her complaint will control in this case. *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977). The defendants argue that, under Pennsylvania law, the most clearly analogous statute of limitations is the two year limitation governing personal injury actions. See, 42 Pa.C.S.A. § 5524(2). Applying this statute, the defendants contend that all claims arising prior to November 12, 1978 must be dismissed. We disagree. In our view there are two major problems with the defendants' argument on this issue. First, in this case we doubt that the defendants have selected the appropriate state statute of limitation.

In her complaint the plaintiff alleges that she was the victim of discrimination occurring in the context of an employment relationship. In the past, in civil rights actions premised on claims of employment discrimination, courts have rejected analogies to Pennsylvania's two-year statute of limitations. See *Davis v. United States Steel Supply Co.*, 581 F.2d 335 (3d Cir. 1978); *Wilson v. Sharon Steel Corp.*, 549 F.2d 276 (3d Cir. 1977); *Morgan v. Sharon, Pa. Board of Education*, 472 F.Supp. 1157 (W.D.Pa. 1979); *Wetzel v. Liberty Mutual Ins. Co.*, 451 F.Supp. 967 (W.D.Pa.1978). Instead

these employment discrimination suits have generally been compared to contract actions in determining the proper statute of limitations.

Admittedly it can be argued that our case is significantly different from prior employment discrimination cases. In all of the prior cases, the plaintiff's prayer for relief sought damages that were contractual in nature. See, e. g. *Davis v. United States Steel Supply*, supra, at 338; *Wilson v. Sharon Steel Corp.*, supra; *Wetzel v. Liberty Mutual Ins. Co.*, supra. In this case, however, the plaintiff seeks damages for emotional distress and aggravation of a preexisting physical condition. These are elements of damage that are typically associated with tort claims. We do not believe, however, that these unique damage claims change the fundamental nature of the relationship between the parties. The defendants are the employers of the plaintiff. The duties they owe to the plaintiff arise out of this contractual employment relationship. Therefore, their conduct should be considered under the statute of limitations governing contract actions. Accordingly, either Pennsylvania's four year or six year statutes of limitations would apply in this case. These are sufficient to cover all of plaintiff's claims. See 42 Pa.C.S.A. §§ 5525, 5527.

However, even if we concluded that Pennsylvania's two year statute of limitations did apply in this case, we would still reject defendants' contention that some of the plaintiff's claims are time-barred. In this case the plaintiff chose to initially pursue administrative remedies for her grievances against the library. In May and June of 1978 she filed complaints with the United States Department of Labor and the Office of Civil Rights. These complaints led to administrative proceedings which were not terminated until June of 1980. We believe that the pendency of these administrative proceedings should toll the statute of limitations. Therefore, for this reason we would reject the defendants' contention that some of the plaintiff's claims are time-barred.

The Rehabilitation Act of 1973 provides an administrative framework for the resolution of discrimination claims brought by the handicapped. See 29 U.S.C. § 792. Because this administrative framework exists it is appropriate that a private litigant exhaust his administrative remedies prior to initiating a suit in federal court. We recognize that there is a division of authority on the question of whether exhaustion of administrative remedies is a prerequisite to judicial relief under Section 504. See, *Patton v. Dumpson*, supra, at 939, and cases cited therein. However, even if exhaustion of administrative remedies is not a prerequisite to this suit in federal court, it is an option which should be encouraged. It would be manifestly unfair to encourage private litigants to seek administrative remedies if at the same time the statute of limitations is allowed to run against them during the pendency of these administrative proceedings. Such a practice would only serve to penalize the litigant who sought orderly administrative review of his complaints. Therefore, we would not in this case allow the statute of limitations to run against the plaintiff during the pendency of these administrative proceedings. See, *Williams v. Interstate Motor Freight Systems*, 458 F.Supp. 20 (S.D.N.Y.1978).

## V.

### GOOD FAITH IMMUNITY DEFENSE.

The defendants also contend in their motion that they are entitled, as a matter of law, to a good faith immunity defense. In support of this motion the defendants have submitted the affidavit of Michele Ridge, the current executive director of the library. In her affidavit Mrs. Ridge generally describes the financial and administrative constraints under which the library operates. She then explains that it was these constraints and not any animus towards the plaintiff that caused the library to delay in renovating the main branch building to accommodate the handicapped. On the basis of this affidavit the defendants argue that the plaintiff's causes of action should all be dismissed.

■ At the outset we note that there is a threshold problem with the defendants' assertion that this good faith immunity defense totally bars the plaintiff's claims in this action. The good faith immunity defense only shields certain civil rights defendants from liability for damages. It does not bar actions for injunctive relief. See, *Hogge v. Hedrick*, 391 F.Supp. 91 (D.C. Va.1974); *Paxman v. Wilkerson*, 390 F.Supp. 442 (D.C.Va.1975). Therefore, to the extent that the plaintiff seeks equitable relief, her claims remain unaffected by the defendants' assertion of this defense.

■ Admittedly, in appropriate instances, certain defendants in civil rights actions can be shielded from liability for damages by asserting a qualified good faith immunity defense. See, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Halderman v. Pennhurst State School and Hospital*, 446 F.Supp. 1295 (E.D. Pa.1977). This is a defense, however, which requires proof of both subjective and objective good faith on the part of the defendants. That is, it must be demonstrated both that the defendant in fact acted in good faith and that the defendants' good faith belief that his actions were proper was reasonable under the circumstances. See, *Wood v. Strickland*, supra; *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53 (3d Cir. 1976). Moreover, this qualified immunity is an affirmative defense and, as such, the defendant bears the burden of proof on the question of good faith. See, *Skehan v. Board of Trustees of Bloomsburg State College*, supra.

■ At this time we feel that the defendants have not met their burden of proof on this issue. The plaintiff named some twenty-seven separate defendants in her complaint. These defendants include Library

Officers and Directors, School Board Members and the County Executive for Erie County. They also include several local governmental units, specifically the School Board of the City of Erie, and Erie County itself.[2] The plaintiff has alleged that these defendants discriminated against her in a variety of ways over the past two and one-half years. The defendants' claim of good faith immunity in this case rests entirely on the affidavit of one defendant. Yet that affidavit simply provides an explanation for the library's delay in installing facilities for the handicapped. It does not address in any way the other allegations contained in the plaintiff's complaint. Moreover, the affidavit provides no insight to the subjective good faith of many of the defendants. Therefore, we conclude that this affidavit by itself, is not sufficient to establish a good faith immunity defense for all of the defendants in this action. Accordingly, we deny the defendants' motion for summary judgment based on the good faith immunity defense.

## VI.

### PENNSYLVANIA'S WORKMEN'S COMPENSATION ACT DOES NOT BAR ANY OF THE PLAINTIFF'S CLAIMS IN THIS ACTION.

■ The defendants' final argument in support of this motion for summary judgment requires little discussion. In their motion the defendants assert that any pendant state tort claims brought by the plaintiff in this case are barred by Section 303 of the Pennsylvania's Workmen's Compensation Act which provides that "the liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employees ...". 77 P.S. § 481(a). As we understand the plaintiff's complaint, however, it does not purport to

2. We note that these entities are now subject to suit for damages arising out of civil rights violations. See *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The liability of these defendants cannot be established, however exclusively on a theory of respondeat superior. See, *Monell*, supra, 436 U.S. at 691, 98 S.Ct. at 2036. At this time the record is not sufficiently developed to allow the court to determine what bases of liability are asserted against these municipal defendants. Therefore we will reserve consideration of this issue for some later time.

raise any pendant state tort claims. Instead it rests exclusively on alleged violations of the plaintiff's federally protected civil rights. Pennsylvania's Workmen's Compensation Act does not, in any way, bar the plaintiff from pursuing these essentially federal claims. See, *Powell v. Workmen's Compensation Board of the State of New York*, 327 F.2d 131 (2nd Cir. 1964). Therefore, in this case, none of the plaintiff's claims will be foreclosed by Pennsylvania's Workmen's Compensation Act.

An appropriate order will issue.