**Rosalie GLANZ, executrix of the Estate of Raymond Vadnais, Plaintiff,**

v.

**Dr. David M. VERNICK, Dr. Michael Miller, Beth Israel Corporation, and Beth Israel Hospital, Defendants.**

**Civ. A. No. 89–0748–MA.**

United States District Court,
D. Massachusetts.

Nov. 1, 1990.

---

Harvey A. Schwartz, Schwartz, Shaw & Griffith, Boston, Mass., for plaintiff.

Claudia Hunter, Bloom and Buell, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

In April, 1989, plaintiff's decedent, Raymond Vadnais, brought this suit against the defendants, alleging discrimination in violation of § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U.S.C. § 794. Specifically, Mr. Vadnais claimed that the defendants refused to perform elective ear surgery on him because he had tested positive for Human Immunodeficiency Virus (HIV), associated with Acquired Immune Deficiency Syndrome (AIDS). Mr. Vadnais claimed to have suffered severe pain in his right ear, which pain was prolonged because of the defendants' failure to perform surgery and disappeared only when surgery was performed elsewhere.

On March 14, 1990, Mr. Vadnais died of AIDS-related illnesses. The motion of plaintiff, executor of the estate of Mr. Vadnais, to be substituted as a party plaintiff pursuant to Fed.R.Civ.P. 25(a)(1) was allowed. Prior to Mr. Vadnais's death, defendants had filed motions for summary

judgment. Those motions were stayed[1] to allow defendants to file the present motion to dismiss on the ground that the cause of action does not survive Mr. Vadnais's death, does not present a case or controversy, and fails to state a claim for which relief can be granted.

## I

I will treat the present motion to dismiss as a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c). Thus, for the purposes of the present motion, accepting the plaintiff's allegations as true and drawing all permissible inferences in her favor, *Rivera–Gomez v. De Castro*, 843 F.2d 631, 635 (1st Cir.1988), the facts can be briefly summarized as follows.

In December, 1986, defendant Dr. Vernick saw Mr. Vadnais at the Ears, Nose, and Throat Clinic at Beth Israel Hospital and treated him for severe pain in the right ear, at first by prescribing antibiotics and ear drops. In January of 1987 Dr. Vernick diagnosed a perforation in Mr. Vadnais's right ear and, at Mr. Vadnais's third visit, recommended surgery to repair the perforation. After Mr. Vadnais agreed to undergo surgery, Dr. Vernick learned that Mr. Vadnais was infected with HIV and in March, 1987, informed Mr. Vadnais that he would not perform the operation. The ear condition persisted, causing severe pain and discomfort, while Mr. Vadnais continued the ineffective use of antibiotics and ear drops.

In August, 1988, a doctor who was unaware of Mr. Vadnais's HIV status performed the surgery, curing Mr. Vadnais's ear problem. Subsequently, Mr. Vadnais brought this lawsuit seeking to enjoin defendants from denying him any further surgical procedures. Mr. Vadnais also sought compensatory damages for the pain and suffering and emotional distress caused by the delay in receiving corrective surgery, along with punitive damages and attorney's fees.

## II

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, states in pertinent part that "[n]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." For the purposes of the present motion, the court will assume that HIV-positive status is a "handicap" within the meaning of the Rehabilitation Act, that Mr. Vadnais was "otherwise qualified" for surgery, and that the defendants qualify as "any program or activity receiving Federal financial assistance." A 1978 amendment to the Rehabilitation Act, § 505(a)(2), as added, 92 Stat. 2982, 29 U.S.C. § 794(a)(2), made available the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" to persons aggrieved of discrimination in violation of § 504.

A troublesome question under both § 504 and Title VI is the extent to which a private cause of action for damages is available. At the very least, the Supreme Court has held that the remedy of backpay for intentional employment discrimination assumed to be available under Title VI in *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), is available to plaintiffs claiming discrimination because of their handicap under § 504. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631, 104 S.Ct. 1248, 1253, 79 L.Ed.2d 568 (1984). *See also Carter v. Orleans Parish Pub. Schools*, 725 F.2d 261 (5th Cir.1984) (interpreting *Guardians Ass'n* as preventing recovery under § 504 without a showing of discriminatory animus). To the extent that intentional discrimination is an element of § 504, the court will also assume that the defendants intentionally refused to perform surgery on Mr. Vadnais because of his handicap.

---

1. Given the disposition of the present motion, the stay of the summary judgment motions will be lifted with the issuance of this order.

The First Circuit has not squarely addressed whether, and to what extent, damages are available under § 504. *See Hurry v. Jones*, 734 F.2d 879, 886 (1st Cir.1984) (finding no need to reach the question); *Ciampa v. Massachusetts Rehabilitation Comm'n*, 718 F.2d 1 (1st Cir.1983) (assuming without deciding that damages are available under § 504). For the purposes of the present motion, this court will likewise assume without deciding that a cause of action for the type of damages that the complaint alleges is available under the statute. *Cf. Miener v. Missouri*, 673 F.2d 969, 973 (8th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) (collecting cases finding an implied right of action under § 504); *Organization of Minority Vendors, Inc. v. Illinois Cent. Gulf R.R.*, 579 F.Supp. 574, 593 n. 9 (N.D.Ill. 1983) (same). The question before the court—on which the statute and the case law are silent—is whether this action abated with the death of plaintiff's decedent.[2]

▌ In determining whether the cause of action survives, an important preliminary issue is whether the question of abatement is to be decided as a matter of state or federal law. The defendants, citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), simply assert that the law of the forum state always governs when statutory and decisional authority are absent. Although defendants' reliance on *Erie* in this federal question case is misplaced, I ultimately reach the same conclusion—that state law applies—by taking a much more circuitous route.

The plaintiff correctly cites the general rule: "The question of survival of an action grounded in federal law is governed by federal common law when ... there is no expression of contrary intent." *Smith v.*

*Department of Human Servs.*, 876 F.2d 832, 834 (10th Cir.1989). *Accord Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 422–23 (D.Conn.1982) (collecting cases); 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1952 (2d ed. 1986). For example, a number of cases considering whether an action brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), abates with the death of the plaintiff have uniformly applied federal law, albeit with disparate results. *See, e.g., Smith*, 876 F.2d 832 (yes); *Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir.1985) (no); *Asklar*, 95 F.R.D. 419 (no). As the ADEA and the Rehabilitation Act are separated by just one chapter within title 29 of the United States Code, it would seem reasonable to conclude that the approach followed in one would be followed in the other.

The basic rule that survival of a federal statutory action is a question of federal common law, however, applies only when "there is no expression of contrary intent," *Smith*, 876 F.2d at 834, or "in the absence of a statutory directive." *Asklar*, 95 F.R.D. at 423. I conclude that § 505(a)(2) of the Rehabilitation Act expresses such contrary intent. Section 505(a)(2), as mentioned previously, invokes for claims asserted under the Rehabilitation Act the "remedies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964. In turn, statutory construction of Title VI, like all other federal civil rights statutes, is governed by 42 U.S.C. § 1988. Section 1988 provides that when the civil rights statutes are "deficient in the provisions necessary to furnish suitable remedies," the federal courts should consult "the common law, as modified and changed by the constitution and statutes of the [forum] state ... so far as the same is not

---

**2.** Plaintiff asserts in her brief that *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), answered this question in the affirmative. While the *Darrone* Court in fact allowed the decedent's claim for backpay in a § 504 case alleging intentional employment discrimination to survive, the case before me is clearly distinguishable both in the remedy sought and the discriminatory action alleged. Moreover, the Court in *Darrone* did

not elucidate the reasons for its findings on this issue, nor the source of the law, except to say that the defendant had conceded that "there remains a case or controversy if [decedent's] estate may recover money that would have been owed to [decedent]," *id.* at 630, 104 S.Ct. at 1252, and that the decedent's personal representative "may assert any right to monetary relief under § 504 that was possessed by [decedent]." *Id.* at 630 n. 8, 104 S.Ct. at 1252 n. 8.

inconsistent with the Constitution and laws of the United States." *See Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (holding that Louisiana survivorship law is not "inconsistent," within the meaning of § 1988, with the purposes of 42 U.S.C. § 1983).

Not all provisions of Title VI, however, apply to § 504. In *Darrone,* the Supreme Court held that § 604 of Title VI, which limits recovery to cases where a primary objective of federal aid is to provide employment, does not apply to § 504. The Court noted that the adoption of Title VI procedures was " 'designed to enhance the ability of handicapped individuals to assure compliance with [§ 504].' " 465 U.S. at 635, 104 S.Ct. at 1255 (quoting S.Rep. No. 890, 95th Cong., 2d Sess. 18 (1978)). The Court concluded that the limitation of § 604 of Title VI was inconsistent with the purposes of § 504. 465 U.S. at 631–35, 104 S.Ct. at 1252–55. I am thus confronted with the question whether, by enacting § 505(a)(2), Congress intended to incorporate § 1988 into the Rehabilitation Act regime.

Unlike § 604 of Title VI, § 1988 is in no way incompatible with § 504. In fact, to the extent that the application of state law is "inconsistent" with federal law, § 1988 by its own terms requires the court to disregard it. Moreover, it is clear by the enactment of § 505(a)(2) that Congress envisioned § 504 to be enforced under a civil rights regime. For the ADEA, by contrast, Congress explicitly chose to adopt the enforcement mechanisms of the Fair Labor Standards Act. *See* 29 U.S.C. § 626(b). Thus, because Congress explicitly adopted the remedies and procedures established in Title VI, and because the incorporation of § 1988 is not *per se* incompatible with the purpose of § 504, I hold that § 1988 governs the choice of law on the question of abatement. *Cf. Grandbouche v. Clancy,* 825 F.2d 1463, 1465 (10th Cir.1987) (analogizing a *Bivens* action to a 42 U.S.C. § 1983 action, then looking to state law, pursuant to § 1988, to provide

the rule of abatement). Therefore, I must consult the law of Massachusetts to determine whether the cause of action survives.

■ Counts I and II of the amended complaint assert claims under § 504.[3] Under both counts, the complaint demands injunctive relief, compensatory damages— "including damages for pain and suffering"—punitive damages, attorneys fees, and costs. The death of plaintiff's decedent has mooted the demand for injunctive relief, and whether plaintiff may collect attorney's fees depends on whether she ultimately prevails in this lawsuit. 29 U.S.C. § 794a(b). Thus, it is left to determine whether the claims for compensatory and punitive damages survive under Massachusetts law.

The Massachusetts survival statute, Mass.Gen.Laws ch. 228, § 1, provides that, in addition to those actions that survive at common law, "[a]ctions of tort *(a)* for assault, battery, imprisonment or *other damage to the person"* survive the death of the plaintiff. (Emphasis added). In *Harrison v. Loyal Protective Life Ins. Co.,* 379 Mass. 212, 396 N.E.2d 987 (1979), the Massachusetts Supreme Judicial Court interpreted the statute to allow survival of a cause of action for intentional infliction of emotional distress. This holding was based on the premise that the phrase "damage to the person" can include damages to "the mind and emotions of a human being as well as the physical body." *Id.* at 216, 396 N.E.2d 987.

Although Mr. Vadnais's injury is based on a statutory violation rather than a common-law tort, the nature of the alleged injury—insofar as compensatory damages are sought—is analogous to the tort actions that survive at Massachusetts law. Inasmuch as plaintiff seeks compensation for pain and suffering caused to her decedent by defendants' failure to perform surgery, it can hardly be gainsaid that such damages to decedent's physical body amount to "damage to the person." *See*

---

**3.** Counts III and IV, not at issue in the present motion, assert claims under a Massachusetts statute that prevents unauthorized disclosure of

a patient's HIV status. Mass.Gen.Laws ch. 111, § 70F.

*Gaudette v. Webb*, 362 Mass. 60, 62–63, 284 N.E.2d 222 (1972) (cause of action for conscious pain and suffering survives death by virtue of Mass.Gen.Laws ch. 228, § 1). Inasmuch as defendants' intentional breach of their duty not to discriminate against him caused emotional distress, this injury too is classified as "damage to the person" under the Massachusetts survival statute as construed by the highest state court. I therefore conclude that the plaintiff's action for compensatory damages would survive under Massachusetts law.

Not so the claim for punitive damages. In *Harrison*, the Supreme Judicial Court postulated that the enactment of the survival statute represented the legislature's embrace of the following logic:

> "So long as the recovery of damages was regarded as a matter of personal vengeance and punishment as between the transgressor and his victim, death erased the purpose of a civil action between them.... [W]hen the function of damages awards came to be recognized as compensatory rather than punitive, the reason for the rule ceased to exist."

*Id.* 379 Mass. at 216–17, 396 N.E.2d 987 (quoting W. Prosser, *Torts* § 126 (4th ed. 1971)). With regard to plaintiff's claim to be compensated for the actual physical and emotional injury to her decedent caused by defendant's act, the common-law rationale for abatement is no longer recognized in Massachusetts. To the extent that plaintiff seeks an award to punish the transgressor, however, the logic behind the abatement rule still applies. Consistent with this logic, I hold that plaintiff's claim for compensatory damages survives, but that the claim for punitive damages does not.[4]

Finally, the court must consider whether this application of state law to allow the survival of compensatory, but not punitive, damages under § 504 is "not inconsistent"

with the federal statute. 42 U.S.C. § 1988. In *Robertson v. Wegmann*, the Supreme Court considered whether a Louisiana law that allowed survival of certain causes of action in favor of the decedent's immediate family, but not his personal representative, was "inconsistent" with 42 U.S.C. § 1983. Noting that "[a] state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation," 436 U.S. at 593, 98 S.Ct. at 1996, the Court reasoned, as follows, that the state law was not inconsistent with the federal statute:

> The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate. And, given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death. A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of Louisiana survivorship law would hardly be influenced in his behavior by its provisions.

*Id.* at 592, 98 S.Ct. at 1996 (footnotes omitted). The analysis in *Robertson* indicates that the Supreme Court would not usually consider a state law allowing abatement of a cause of action to be "inconsistent" with a federal civil rights statute.

The plaintiff argues that this case presents a set of unusual circumstances in which abatement may in fact defeat the purpose of the statute. In a footnote of the *Robertson* opinion, Justice Marshall stated:

---

**4.** Without offering a comprehensive analysis of the federal common law standard, I simply note in the margin that the same result would probably obtain. In terms of the three-factor test articulated in *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 208–09 (6th Cir.1977), while compensatory damages for actual harm suffered are

intended to redress individual injury, run to the individual, and are proportionate to the harm suffered, the same cannot be said of punitive damages. Therefore, an action for the latter would abate, while an action for the former would survive.

In order to find even a marginal influence on behavior as a result of Louisiana's survivorship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit. . . .

*Id.* at 592 n. 10, 98 S.Ct. at 1996 n. 10. Given the high mortality of AIDS patients, the plaintiff argues that programs receiving federal funds may in fact feel free to discriminate against them, taking sanctuary in the knowledge that the § 504 cause of action will likely abate. The short answer to this rather compelling argument is that my decision to allow the action for compensatory damages to survive eliminates this perverse incentive.

Furthermore, allowing the cause of action for punitive damages to abate is surely not inconsistent with the purposes of § 504. As I noted earlier, the extent to which monetary damages are available under § 504 is unsettled. Some cases have held that only injunctive relief is available. *See, e.g., Manecke v. School Bd.,* 553 F.Supp. 787, 788–90 (M.D.Fla.1982), *rev'd on other grounds,* 762 F.2d 912 (11th Cir. 1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986); *Carter v. Independent School Dist.,* 550 F.Supp. 172, 174 (W.D.Okla.1981); *but see Hutchings v. Erie City & County Library Bd. of Directors,* 516 F.Supp. 1265 (W.D.Pa.1981); *Patton v. Dumpson,* 498 F.Supp. 933 (S.D. N.Y.1980). In all likelihood, if a cause of action for damages is available at all, it would be limited to compensatory damages for actual harm suffered. The Supreme Court's affirmation in *Darrone* of a cause of action for backpay in an employment discrimination scenario is consistent with this view.

It is quite unlikely, however, that Congress intended § 504 to provide a windfall to plaintiffs in the form of punitive damages. *See Gelman v. Department of Educ.,* 544 F.Supp. 651 (D.Colo.1982) (concluding that compensatory damages, but not punitive damages, are available under § 504). While a private cause of action for

compensatory damages may be necessary to vindicate the rights of an individual discrimination victim, *see Patton,* 498 F.Supp. at 940, punitive damages are not necessary to perform the deterrent function of discouraging § 504 violations. That function is properly performed by the administrative remedy of termination of federal funding. *See* 45 C.F.R. § 80.8 (1989), incorporated by reference, *id.* § 84.61. Thus, my holding that the cause of action for punitive damages abates under state law is not inconsistent with the purposes or procedures of the Rehabilitation Act.

### III

■ Because plaintiff's cause of action for compensatory damages under § 504 survives, the present action obviously presents a case or controversy within the constitutional adjudicatory power of an Article III court. There is no merit to defendants' argument that Mr. Vadnais's death mooted the present action.

### IV

■ Finally, defendants argue that relief is not available under § 504 to a plaintiff who claims discrimination in individual medical treatment decisions. Defendants rely primarily on *United States v. University Hosp., State Univ. of N.Y.,* 729 F.2d 144 (2d Cir.1984), which held that § 504 does not apply to a federal funding recipient's decision not to perform a specific corrective surgical procedure on a severely handicapped infant without the parents' consent. In addition to finding that such an action was not anticipated in the legislative history of the Rehabilitation Act, the panel reasoned that the "otherwise qualified" language of § 504 "cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Id.* at 156. In addition, the court noted that "[w]here the handicapping condition is relevant to the condition(s) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory'." *Id.* at 157.

Judge Winter, in dissent, criticized the panel for ignoring the Congress's mandate to treat handicap discrimination in the same manner that Title VI of the Civil Rights Act treats racial discrimination. *Id.* at 162 (Winter, J., dissenting). Although § 504 does not authorize the courts to override medical decisions, he argued, § 504 properly permits an inquiry into whether a medical decision is "a *bona fide* medical judgment," or whether handicap has improperly been taken into account. *Id.* By drawing an analogy to Title VI, the court can eliminate the "uncertainty" surrounding the determination of whether a medical decision is discriminatory: "A judgment not to perform surgery because a person is black is not a *bona fide* medical judgment." *Id.*

The majority opinion in *University Hospital* does not govern the present case, which is clearly distinguishable because it does not involve an infant and does not require the court to override parental authority. Here, the hospital refused the patient's request for surgery. Moreover, as Judge Winter's dissenting opinion points out, the plain language of the statute, together with its appeal to the remedies and procedures of Title VI, clearly spells out the scope of the § 504 inquiry: Was the patient otherwise qualified for surgery, and was surgery denied because of unjustified consideration of the handicap? The inquiry is complicated, of course, by the fact that HIV status may be relevant to a determination of whether surgery is advisable, *cf. Doe v. New York Univ.*, 666 F.2d 761, 777 (2d Cir.1981) (federal fund recipient was entitled to take handicap into account in determining whether plaintiff was "otherwise qualified"), but the determination of such subtle questions of intent and motive is a well-traveled judical road. *See, e.g., Leckelt v. Board of Comm'rs*, 909 F.2d 820, 824–30 (5th Cir.1990), *aff'g*, 714 F.Supp. 1377 (E.D.La.1989); *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1384–87 (10th Cir.1981). Just because the inquiry is difficult, the court is not justified in ignoring the plain mandate of the statute and refusing to enforce it.

I therefore conclude that the complaint does state a cause of action for which relief can be granted under § 504.

## ORDER

Defendants' motion to dismiss this suit because the cause of action abated with the death of plaintiff's decedent is DENIED with respect to plaintiff's claim for compensatory damages and attorney's fees under §§ 504–505 of the Rehabilitation Act of 1973. Defendants' motion to dismiss is ALLOWED with respect to the claims for injunctive relief and punitive damages. Defendants' motion to dismiss on the ground that the complaint fails to state a claim for which relief can be granted is DENIED.