EDWARD F. KEATING *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

RICHARD W. KEATING (afterwards by amendment BRIDGET
KEATING, administratrix,) *vs.* SAME.

Suffolk.    January 11, 1911. — June 19, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY,
SHELDON, & RUGG, JJ.

*Negligence,* In use of highway, Street railway.    *Survival of Actions.    Words,*
"Damage to the person," "Damage to personal property."

If the driver of a two-horse covered wagon, when proceeding along a highway on
a winter evening at the right hand side of two parallel street car tracks, finds
that the right rear wheel of the wagon has caught in a cradle hole or rut two
inches deep, and, being too near the curbstone to pull out on the right, he turns
his horses to the left to pull the wagon out of the hole, and if, just before he
turns his horses to the left, he looks both ways on the tracks for an approaching
car, sees none coming on the nearer track and on the farther track sees the
headlight of a car about one thousand yards or three quarters of a mile away,
and if, after two unsuccessful attempts to pull the wagon out of the hole, he
rests his horses for a minute or so and then turns them still more to the left so
that they make an angle of ninety degrees with the wagon and are across the
nearer track, and he then stands up and urges the horses and "chases" them
forward, and the horses move ahead across the farther track, and the driver
then looks and sees the approaching car only eighteen feet away, moving at the
rate of fourteen miles an hour, and succeeds in pulling the horses out of the
way, but the car strikes the right forward wheel, throwing the driver from his
high seat to the ground, in an action by the driver against the corporation oper-
ating the street railway for his injuries thus caused, where there is evidence of
the defendant's negligence, he has a right to go to the jury on the question
whether he was in the exercise of due care.

Under R. L. c. 171, § 1, as at common law, an action by a father for the loss of the
services of his minor son and expenses for medical attendance, incurred by rea-
son of personal injuries to the plaintiff's son caused by the defendant's negli-
gence, does not survive.

An action of tort for "damage to the person," which survives under R. L. c. 171,
§ 1, is an action for damage to the person of the decedent himself, and does not
include an action for expenses incurred by the decedent by reason of damage to
the person of his minor son.

An action of tort for "damage to . . . personal property," which survives under
R. L. c. 171, §·1, is an action for damage to specific property, and does not in-
clude an action for the reduction of the decedent's property in consequence of
paying doctor's bills incurred by him to cure his minor son when injured by the
defendant's tortious act.

TWO ACTIONS OF TORT, the first by a minor for personal
injuries sustained on January 31, 1907, on Western Avenue in

that part of Boston called Brighton, when the plaintiff was thrown from the high seat of a two-horse wagon in which he was driving by its being run into by an electric car of the defendant, and the second by the father of the plaintiff in the first case for the loss of his son's services and for expenses incurred by reason of his injuries.   Writs dated March 30, 1907.

Before the trial Richard W. Keating, the original plaintiff in the second case, died, and Bridget Keating, the administratrix of his estate, was admitted as plaintiff to prosecute that action. In the Superior Court the cases were tried together before *Brown*, J.   After the plaintiffs' opening, the defendant moved that the second cause of action be dismissed on the ground that the cause of action did not survive the death of the original plaintiff.

The facts which appeared in evidence are stated in the opinion. At the close of the evidence the defendant, without waiving its motion to dismiss the second action, asked the judge to order a verdict for the defendant in each case on the ground that upon all the evidence the plaintiff in the first case was not in the exercise of due care ; and that upon all the evidence the defendant was not negligent.   It was thereupon agreed by the parties that in order to avoid a new trial the cases should be submitted to the jury and then reported by the judge to this court.

The jury returned a verdict for the plaintiff in the first action in the sum of $400, and for the plaintiff in the second action in the sums of $200 for loss of services and $100 for medical expenses.

The judge reported the cases for determination by this court, with the following stipulation: If there was no evidence from which the jury might find that the plaintiff in the first action was in the exercise of due care, or that the defendant was negligent, judgment was to be entered for the defendant in each case.   If there was evidence from which the jury might find that the plaintiff in the first case was in the exercise of due care and that the defendant was negligent, judgment was to be entered on the verdict in the first case ; and judgment was to be entered on the verdict in the second case unless the cause of action for loss of services or medical expenses or either of them, did not survive the death of the original plaintiff.   If the action for loss of

services survived and that for medical expenses did not, or *vice versa*, judgment was to be entered for the plaintiff for $200 or $100, as the case might be. If neither cause of action survived, judgment was to be entered for the defendant.

The case was argued at the bar in January, 1911, before *Knowlton*, C. J., *Loring*, *Braley*, *Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*F. R. Mullin*, (*P. F. Spain* with him,) for the plaintiffs.

*F. M. Ives*, for the defendant.

LORING, J.   The plaintiff in the first case was driving a two-horse covered wagon along Western Avenue in Brighton, at about eight o'clock P. M. in the month of January, when the right rear wheel " caught in a cradle hole or rut about two inches deep." His right wheels were about three feet from the curb on the right side of the street and his left wheels were within three feet of the southerly rail of the inbound track of the defendant corporation. To the left of the inbound track there was an outbound track. The plaintiff found that he was too near the curbstone to pull out to the right, so he turned his horses to the left to pull the wagon out of the hole or rut. Just before he turned them to the left he looked both ways for an approaching car or cars. He saw none coming on the inbound track but he did see on the outbound track the headlight of the car which finally ran him down, about one thousand yards or three quarters of a mile away. When he first turned the horse to the left they were at an angle of forty-five degrees to the wagon, and they were on the inbound track. He then urged them forward, but they did not pull the wagon out of the rut. Then he rested them for a minute or so. Then he turned them still more to the left so that they made an angle of ninety degrees to the wagon, and that brought the horses across the inbound track. He then " stood up and urged and ' chased them ' forward " and " the horses moved ahead across the outbound track, straightening the team out after them, and when the front wheels of the wagon were in the middle of the outbound track " " he looked and saw the car eighteen feet away." He did not have time to jump, but he succeeded in pulling the horses out of the way and the car struck the right forward wheel of the wagon, throwing him to the ground. He testified that he

thought four or five minutes elapsed between the time when he looked the first time and the time when he was struck, or when he looked just before he was struck. The only direct evidence as to the speed of the car showed that it was going at the rate of fourteen miles an hour.

In *Seele* v. *Boston & Northern Street Railway*, 187 Mass. 248, it was held that a plaintiff was guilty of contributory negligence who drove for three quarters of a mile alongside of the defendant's tracks after looking to see whether a car was coming, and then turned and drove across them without looking again. The same result was reached in *Tognazzi* v. *Milford & Uxbridge Street Railway*, 201 Mass. 7, where the plaintiff looked to see whether a car was coming; seeing none, he drove for three hundred feet alongside the tracks, and then turned and drove across them without looking again. In that case there was evidence that there was a clear view of the track for " several hundred feet."

In our opinion the case at bar is taken out of those decisions by the fact that the plaintiff here saw the car and that the car was then one thousand yards to three quarters of a mile away. After seeing that the car was then at that distance away, the plaintiff concentrated his attention upon extricating his wagon from the rut in which it was stalled for a period of time which he testified was four or five minutes. The jury would be warranted in not taking his testimony as to the intervening time literally, in inferring that he originally thought that he had time to extricate the wagon from the rut and get across before the car reached him, and in finding that he became so engrossed in what he was doing that without being guilty of negligence he kept on with those endeavors without looking again until just before he was struck. We are therefore of opinion that the presiding judge was right in submitting the first case to the jury. See in this connection *McCrohan* v. *Davison*, 187 Mass. 466; *Murphy* v. *Boston Elevated Railway*, 204 Mass. 229; *O'Brien* v. *Lexington & Boston Street Railway*, 205 Mass. 182; *Hatch* v. *Boston & Northern Street Railway*, 205 Mass. 410.

The second action was for loss of services and for doctors' bills incurred by the father of the plaintiff in the first action. A father still has an action for doctors' bills paid or incurred by

him for the injuries done to his minor son by the tortious act of the defendant. But such an action is a personal action which did not survive at common law. See note to *Lane* v. *Wheatley,* 1 Saund. 216 ; *Kearney* v. *Boston & Worcester Railroad,* 9 Cush. 108, 109; *Norton* v. *Sewall,* 106 Mass. 143, 144. And it does not survive under our statute as to the survival of actions. R. L. c. 171, § 1. It is not an action of " tort . . . for . . . damage to the person." That is confined to damage to the person of the decedent and does not include damage to the pocket of the decedent because of damage to the person of another. See *Hey* v. *Prime,* 197 Mass. 474, and cases cited. Although a broader construction was given in *Mulvey* v. *Boston,* 197 Mass. 178, to similar words in a statute of limitations. Nor is it an action "for damage to . . . personal property." That " does not apply to mere impoverishing of a man's estate generally, but requires that damage to some specific property should be alleged and proved." *Cutter* v. *Hamlen,* 147 Mass. 471, 472.

The result is that by the terms of the report the entry in the first action must be judgment on the verdict, and in the second action judgment for the defendant.

*So ordered.*