MARIE K. HARRISON, administratrix, *vs.* LOYAL PROTECTIVE LIFE INSURANCE COMPANY & others.

Suffolk. September 14, 1979. — November 8, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Survival of Action. Emotional Distress. Practice, Civil,* Motion to dismiss.

Background stated for the conclusion that G. L. c. 228, § 1 (2)(a), as amended by St. 1975, c. 377, § 62, listing, as an action which will survive, an action of tort for "damage to the person," encompasses a tort action for intentional infliction of emotional distress. [214-217]

The tort of intentional infliction of emotional distress, whether with or without physical injury, survives the death either of the victim or the tortfeasor. [217-218]

The application of G. L. c. 233, § 65, respecting the admissibility of a declaration of a deceased person, in an action of tort for emotional distress would not preclude survival of the action. [219]

Under a complaint by the administratrix of the estate of her deceased husband in an action of tort for the intentional infliction of emotional distress averring that "the defendant . . . allowed and was aware that his employee, [naming an officer of a company who allegedly committed

the tort], acting as an employee of the defendant . . . made actual threats" of job loss to the husband sufficiently stated a claim against the defendant, and a judgment dismissing the action on motion was reversed. [219-220]

CIVIL ACTION commenced in the Superior Court on January 19, 1978.

Motions to dismiss were heard by *Smith,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*William E. Searson, III (James P. McCarthy* with him) for the plaintiff.

*William G. Meserve* for the defendants.

HENNESSEY, C.J. This case brings before the court for the first time the question whether an action in tort for the intentional infliction of emotional distress survives the death of the injured party. We hold that the action does survive.

The plaintiff, administratrix of the estate of her deceased husband (Harrison), seeks to recover damages for the intentional infliction of emotional distress and resulting physical harm to her husband. The defendants are Harrison's employer Loyal Protective Life Insurance Company (Loyal), Edward J. Fitzwilliam, an officer of Loyal alleged to have committed the tort, and Victor L. Sayyah, who allegedly employed Fitzwilliam. The Superior Court judge granted the defendants' motions to dismiss the action under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), on the ground that the cause of action did not survive Harrison's death. Sayyah's motion added the further grounds that there was no allegation that Sayyah had inflicted any mental or emotional distress upon Harrison or had personally employed Fitzwilliam or was otherwise personally responsible for Fitzwilliam's acts. The appeal was transferred to this court on our own motion.

The facts, as presented in the plaintiff's complaint, may be summarized as follows. In August or September of 1977 Fitzwilliam, who was aware that Harrison had terminal

cancer and was therefore unable to continue working for Loyal, threatened Harrison that if Harrison filed for his physical disability benefits he would not be allowed to return to his job at Loyal when he regained his health. As a result Harrison suffered mental anguish and lost all hope to live and to continue as an active person after he recovered from his illness. This led to a deterioration of his physical condition and his ultimate death on November 13, 1977, of cancer.

The rule at common law was that a right of action for tort did not survive the death either of the person injured or of the wrongdoer. *Putnam* v. *Savage,* 244 Mass. 83, 85 (1923). This ancient common law dogma has been altered by the Massachusetts Survival Statute, G. L. c. 228, § 1, as amended by St. 1975, c. 377, § 62, which reads, in pertinent part, as follows: "In addition to the actions which survive by the common law, the following shall survive: — . . . (2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person . . . ."

Several early judicial constructions of the predecessors of this statute (which were essentially similar in terms to G. L. c. 228, § 1) evinced a narrow view of the words "other damage to the person." In those cases it was concluded that the statutory language encompassed only "damage of a physical character." *Smith* v. *Sherman,* 4 Cush. 408, 413 (1849). Thus the court held that actions for breach of promise to marry, *Smith* v. *Sherman, supra*; for malicious prosecution, *Nettleton* v. *Dinehart,* 5 Cush. 543 (1850); for libel, *Cummings* v. *Bird,* 115 Mass. 346 (1874); for criminal conversation, *Dixon* v. *Amerman,* 181 Mass. 430 (1902); for consequential damages to a husband arising from personal injury to his wife, *Hey* v. *Prime,* 197 Mass. 474 (1908); and for damages to a father resulting from personal injury to his minor child, *Keating* v. *Boston Elevated Ry.,* 209 Mass. 278 (1911), did not survive under the statute.

These early constructions of the statute, however, do not control our decision concerning the survival of a cause of action for the recently recognized tort of intentional infliction

of emotional distress. The Legislature stated that its list of surviving torts was to be "in addition to the actions which survive by the common law." Since there were no tort actions that did survive under the traditional common law rule, *Putnam* v. *Savage,* 244 Mass. 83, 85 (1923); *Michigan Cent. R.R.* v. *Vreeland,* 227 U.S. 59, 67 (1913), the Legislature must have meant "common law" as it evolves in the courts subsequent to the enactment of this statute. See *Rodgers* v. *Ferguson,* 89 N.M. 688 (1976). There is further support for this conclusion in that it is plain from the structure and language of the statute that the Legislature did not intend to give an exhaustive list of torts which would survive and thereby to imply that those not so listed must abate upon death as they had at common law. On the contrary, the Legislature intended to abrogate the common law non-survival rule by virtue of a flexibly drawn statute which gives a partial listing of torts that should survive followed by the broad phrase "or other damage to the person." This phrase clearly leaves room to accommodate other torts which the court might deem to involve damage to the person. Thus the statute is sufficiently dynamic to allow for a change in judicial conceptions of what types of harm constitute legally redressable "damage to the person."

Those cases cited, *supra,* which gave a narrow construction of "damage to the person" were decided at a time when the general attitude of the court toward mental or emotional distress as a legally redressable harm was more restrictive than it is today. Only in 1971 in *George* v. *Jordan Marsh Co.,* 359 Mass. 244 (1971), did this court take the step of recognizing a cause of action for the intentional infliction of emotional distress with resulting physical harm. In 1976 this court extended this concept by ruling in *Agis* v. *Howard Johnson Co.,* 371 Mass. 140 (1976), that one may recover solely for intentionally inflicted emotional distress without any allegation of resulting physical injury.

In the absence of these recent developments in the judicial attitude it is not surprising that the early decisions read the words "harm to the person" in the survival statute as en-

compassing only harm to the body of the person and not to the mind or emotions of the person. In light of the modern judicial attitude toward redressing emotional injury it is time to reexamine this flexibly drawn statute to see if it might appropriately be applied to the new tort of intentional infliction of emotional distress.

The language of the statute offers support for a reading which includes the tort of intentional infliction of emotional distress. The statute refers to "damage to the person" without qualifying either the word "damage" or the word "person" with an adjective such as "physical." Thus the word "person" should be read as it ordinarily would be read without any other words to modify it. According to Webster's New International Dictionary of the English Language 827, 828 (2d ed. 1959), included among the definitions of the word "person" are the following: " 2) [a] being characterized by conscious apprehension, rationality, and a moral sense; . . . 5) the real self of a human being; individual personality." It is apparent, therefore, that the word "person," according to common understanding, can include the mind and emotions of a human being as well as the physical body.

Apart from these considerations of the statutory structure and language, we must inquire whether as a matter of policy it is appropriate that the tort of intentional infliction of emotional distress should survive. The original reasons for the nonsurvival of torts at common law have been largely obscured in antiquity. "The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct and incident to criminal punishment in the old appeal of felony and the action of trespass. . . ." W. Prosser, Torts § 126 (4th ed. 1971). "So long as the recovery of damages was regarded as a matter of personal vengeance and punishment as between the transgressor and his victim, death erased the purpose of a civil action between them. The legal successor of the deceased party was neither the wronged nor the wrongdoer and had no personal involvement in the wrong. . . . [W]hen the function of damages awards came to be recognized as compensatory

rather than punitive, the reason for the rule ceased to exist."
Smedley, Wrongful Death — Bases of the Common Law
Rules, 13 Vand. L. Rev. 605, 608-609 (1960). Clearly, the
passage of the Massachusetts Survival Statute in abrogation
of the common law represents the Legislature's acceptance
of this logic.

Another potential reason for the continuance of the non-
survival rule in the case of the tort of intentional infliction of
emotional distress is offered by the defendants in their brief.
The defendants argue that, because of the difficulty of prov-
ing (or disproving) emotional injuries, the potential for
fraud on the court is greater than with physical injuries and
therefore the court should not entertain suits for emotional
injuries unless both victim and wrongdoer are alive at the
time of the suit. First, the fact that the statute permits the
action for assault to survive evinces a legislative judgment
that the courts are capable of deciding tort suits involving
mental and emotional damages after the death of one or
both of the parties. See *Ross* v. *Michael*, 246 Mass. 126
(1923) (in an action for assault, the plaintiff was entitled to
recover damages for the humiliation, indignity and injury to
his feelings). It would be anomalous to hold that actions for
assault, which may involve only slight harm, see *Richmond*
v. *Fisk*, 160 Mass. 34 (1893), survive but that actions for in-
tentional infliction of emotional distress, which must in-
volve severe distress, *Agis* v. *Howard Johnson Co.*, 371
Mass. 140 (1976), do not survive.

In *Agis* v. *Howard Johnson Co.*, *supra*, this court dealt
with the question whether the difficulty of proof and the
danger of fraud should prevent the court from recognizing
the independent tort of intentional infliction of emotional
distress without resulting physical damage. We concluded
that "administrative difficulties do not justify the denial of
relief for serious invasions of mental and emotional tran-
quility." *Id.* at 143, quoting from *State Rubbish Collectors
Ass'n* v. *Siliznoff*, 38 Cal. 2d 330, 338-339 (1952). "It is the
function of courts and juries to determine whether claims
are valid or false. This responsibility should not be shunned

merely because the task may be difficult to perform." *Id.* at 144, quoting from *Samms* v. *Eccles,* 11 Utah 2d 289, 293 (1961). It is in keeping with this policy that we conclude that the tort of intentional infliction of emotional distress (whether with or without physical injury) survives the death either of the victim or the tortfeasor.

If we examine the nature of this tort as delineated by this court it becomes apparent that the potentiality for fraud is not excessive. In general a plaintiff has to show what the defendant has done or said to him and the trier of fact must then decide if the actions or words of the defendant would have caused severe emotional distress in a reasonable person. *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976). As for the proof of the defendant's actions or words, an emotional distress case is no different from a case of battery or contract, both of which survive. As for determining the effect of the defendant's actions or words, in most cases no extraordinary confusion should be caused by the death of either party because "[f]rom their own experience jurors are aware of the extent and character of the disagreeable emotions that may result from the defendant's conduct." *Agis* v. *Howard Johnson Co., supra* at 144.

In those cases in which the plaintiff alleges that the injured party had some peculiar susceptibility so that the defendant's otherwise reasonable conduct toward him was tortious, see *Boyle* v. *Wenk,* 378 Mass. 592, 596 (1979), the factual question becomes more subjective. In such a case it is necessary for the jury to focus on the individual who was wronged and to decide whether he was indeed so susceptible and then to decide the degree of distress felt by this peculiarly susceptible person. Even in such a case, however, it does not appear that the death of either principal would create insurmountable evidentiary problems or open the door to fraud. If the wrongdoer is deceased, that is of little moment because it is not his evidence that is crucial to the issues of the plaintiff's susceptibility and the degree of distress felt by the plaintiff. If on the other hand the injured party is deceased, there is of course no potential for fraud through the plaintiff's fabricated testimony.

The only real problem left is that the plaintiff can introduce prior statements of the deceased party about his susceptibility and his emotional distress if they were made in good faith. G. L. c. 233, § 65. Such statements, of course, would have to be weighed by the jury without the benefit of cross-examination. This might in some cases redound to the benefit of a deceased claimant but would actually only act as a counterweight to the disadvantage the plaintiff would suffer by not having the direct testimony of the deceased concerning his condition and emotional distress. Moreover, the legislative decision to create this exception to the hearsay rule for declarations of deceased persons is applicable in all civil cases. We cannot conclude that the application of this exception (with its requirement of good faith) in an emotional distress case would be so inordinately favorable to the plaintiff as to require us to preclude the survival of the tort action.

Because we hold that the cause of action for intentional infliction of emotional distress does survive the death of Harrison, we must examine the contention of the defendant Sayyah that the action should be dismissed as to him on the ground that there were insufficient allegations that he personally employed Fitzwilliam or was otherwise personally responsible for the acts of Fitzwilliam. In evaluating Sayyah's motion to dismiss for failure to state a claim under Mass. R. Civ. P. 12 (b) (6), we follow the standard advanced in *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957): "'In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true."

Under this standard it is clear that the complaint is sufficient to state a claim against Sayyah. Count 3, paragraph

1, of the complaint avers that "the defendant, Victor L. Sayyah allowed and was aware that his employee, namely Edward J. Fitzwilliams [*sic*] acting as an employee of the defendant, Victor L. Sayyah . . . made actual threats against Herman K. Harrison. . . ." At this stage we cannot assume that the plaintiff can advance no facts sufficient to establish that Fitzwilliam acted as Sayyah's employee.

*Judgment reversed.*