1999 OK CIV APP 6

**Harvey Dean CLEMENTS, as Personal Representative of the Estate of H.D. Clements a/k/a Herchel Dean Clements, Appellant,**

**v.**

**ITT HARTFORD, a foreign insurance company; and Hartford Underwriters Insurance Company, a foreign insurance company, Appellees**

**No. 91,299.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 25, 1998.

Certiorari Denied Nov. 18, 1998.

James A. Scimeca, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, Oklahoma, For Appellant.

Brently C. Olsson, Huckaby, Fleming, Frailey, Chaffin, Cordell, Greenwood & Per-

ryman, L.L.P., Oklahoma City, Oklahoma, For Appellees.

REIF, J.

¶1 This appeal arises from a suit by the personal representative of the estate of Herchel Dean Clements to recover damages for alleged bad faith by Mr. Clements' automobile insurer, ITT Hartford. Personal representative contended that ITT Hartford acted in bad faith in delaying payment of uninsured/underinsured motorist benefits to Mr. Clements during his lifetime. There is no dispute that Mr. Clements retained a lawyer who made demand for ITT Hartford to pay damages for ITT Hartford's alleged bad faith in delaying payment. However, there is also no dispute that Mr. Clements died before filing suit. ITT Hartford moved for summary judgment dismissal of personal representative's suit. ITT Hartford argued that a cause of action for an insurer's bad faith is a tort that is personal to the insured and does not survive the death of the insured. The trial court agreed and granted summary judgment in favor of ITT Hartford. The trial court ruled "as a matter of law, that Plaintiff's claim for breach of an insurer's duty of good faith and fair dealing [i.e. bad faith] does not survive the death of the insured." Upon de novo review, we hold that this conclusion was error and reverse.

¶2 Whether a cause of action for an insurer's bad faith survives the death of the insured is a question of first impression in Oklahoma. The only case on this issue cited to the trial court below was *Carne v. Maryland Casualty Co.*, 208 Tenn. 403, 346 S.W.2d 259 (1961). This case did hold that a cause of action for insurance bad faith does not survive the death of the insured. However, the court applied common law principles in so holding because the court concluded that this tort cause of action did not come within any of Tennessee's survival statutes. While this case is helpful in deciding whether a cause of action for bad faith survives under common law principles, it provides little help for determining whether this cause of action may otherwise survive under Oklahoma's survival statute—12 O.S.1991 § 1051.

¶3 Section 1051 expressly provides for survival of certain causes of action "[i]n addition to the causes which survive at common law." (Emphasis added.) Causes of action for "injury to the person ... or personal estate" are among the additional causes of action that survive. This section both preserves survival under common law and expands survival.

¶4 ITT Hartford also cited the second syllabus of *Columbian National Life Ins. Co. v. Lemmons*, 96 Okla. 228, 222 P. 255 (1923), to the trial court below as support for its position that a cause of action for insurance bad faith does not survive. The second syllabus of *Lemmons* does set forth and validate the common law principle that "a cause of action ... founded in tort, unconnected with contract [which] affects the person and not the estate ... dies with the person." However, the court in *Lemmons* did not consider whether the cause of action under consideration would survive as "an injury to the person ... or personal estate." The court in *Lemmons* confined its inquiry to common law survival because the court concluded that a cause of action for failure to timely act on an application for insurance was simply the type of contract-based tort that had always survived at common law. Accordingly, the second syllabus cannot be viewed as any type of limiting construction on the additional causes of action that survive under section 1051.

¶5 In *Spiker v. Farmers Co-op. Exchange of Jet*, 1990 OK CIV APP 102, 802 P.2d 650, the Oklahoma Court of Civil Appeals held that a statutory tort claim for retaliatory discharge of an employee for exercise of workers' compensation rights survives the death of the affected employee. In so holding, the court found that it would survive under either the common law rule in the second syllabus of *Lemmons*, or under section 1051 as a cause of action "for an injury to ... personal estate." The court made it clear, however, that it was not prescribing a common law analysis where a tort otherwise comes within section 1051. The court recognized that "the common-law rule has been abrogated or modified [in] Oklahoma" and that "the survivability of the action [for retaliatory discharge] is not based

upon a finding that it is a contract action." In terms of common law analysis, the court in *Spiker* simply did what the court in *Lemmons* did—first, determine whether a cause of action survives at common law because the principles of common law survival are preserved; then, if there is any question about survival under common law principles, determine whether the cause of action comes within any of the additional causes of action that the legislature has decided should survive.

¶ 6 A cause of action for an insurer's bad faith in delaying payment under a policy of insurance seemingly satisfies the common law principle of a tort cause of action based on contract. However, the injury of emotional distress and the detriment of incurring attorney fees to enforce the contract of insurance "are not part of the contract but would inure to the benefit of the plaintiff in tort for bad faith." *Carne*, 346 S.W.2d at 262. "The cause of action [is] purely an ex delicto cause even though the relationship of the parties out of which the tort was committed grew out of a contract." *Id.* Accordingly, in order to survive, a cause of action for an insurer's bad faith that seeks recovery for emotional distress and attorney fees to enforce the contract must come within the additional statutory causes of action for "an injury to the person ... or personal estate."

¶ 7 According to *State ex rel. Mitchell v. City of Shawnee,* 167 Okla. 582, 31 P.2d 552, 556 (1934), Oklahoma's statutes dealing with abatement and survival "were adopted from the state of Kansas." The Kansas survival statute "is an innovation on the common law, and it is to be liberally construed." *Seamans v. Brown,* 109 Kan. 448, 199 P. 473, 474 (1921).

¶ 8 One of the earliest Oklahoma cases to construe the identical language appearing in section 1051 is *Casteel v. Brooks,* 46 Okla. 189, 148 P. 158, 160–61 (1915). The court stated:

> [T]he language of the statute is too plain to admit doubt:
>
> "The causes of action * * * for * * * injury to the person * * * shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

— means exactly what it says.

¶ 9 *Casteel* affirmed a judgment on a jury verdict in favor of the plaintiff who was emotionally traumatized by a murder-suicide that occurred in her hotel. Plaintiff recovered from the estate of the murderer who had also committed suicide. The deceased, with drawn pistol, had told plaintiff "in a violent threatening tone that if she did not go back into her room he would kill her." *Id.* at 159. However, plaintiff suffered no battery or physical injury from the deceased. Following the threat, plaintiff "fainted and fell to the floor [and] after she regained consciousness upon going into the parlor she saw the dead bodies ... and the room spattered with blood, which caused her to become hysterical and highly nervous, to such an extent that she was almost insane." *Id.* Plaintiff "required the attention of a physician for several days to quiet her, since which time her nervous system is unsettled and disturbed to the extent she has not recovered." *Id.* She sought and recovered damages for "physical and mental pain and distress" and because she was "permanently damaged in her health." *Id.*

¶ 10 *Casteel* clearly recognizes that "injury to the person" includes an "unsettled and disturbed" nervous system and "mental pain and distress." *Casteel* represents the trend to liberally construe "injury to the person" and similar language in survival statutes to include emotional distress. For example, the Arizona Supreme Court has held in *Reed v. Real Detective Pub. Co.,* 63 Ariz. 294, 162 P.2d 133, 136 (1945) (citation omitted), that the Arizona statute providing non-abatement for "[a]n action to recover damages for injuries to the person" allows survival of a cause of action for invasion of privacy. The Arizona high court explained:

> It seems to us that the mind of an individual, his feelings and mental processes, are as much a part of his person as his observable physical members.... In that respect a cause of action for the violation of the right of privacy, causing mental suffering to the plaintiff, is an injury to the person.

Similarly, the Supreme Judicial Court of Massachusetts has held that a cause of action for intentional infliction of emotional distress comes within the Massachusetts statutory provision for survival of tort actions involving "other damage to the person." *Harrison v. Loyal Protective Life Ins. Co.,* 379 Mass. 212, 396 N.E.2d 987, 989 (1979). The court noted that "the word 'person,' according to common understanding, can include the mind and emotions of a human being as well as the physical body." *Id.* at 990.

¶ 11 In *Harrison,* the court discerned an intent by the Massachusetts legislature "to abrogate the common law nonsurvival rule by virtue of a flexibly drawn statute which gives a partial listing of torts that should survive followed by the broad phrase 'or other damage to the person.'" *Id.* at 989. According to the court, "[t]his phrase clearly leaves room to accommodate other torts which the court might deem to involve damage to the person [making] the statute ... sufficiently dynamic to allow for a change in judicial conceptions of what types of harm constitute legally redressable 'damage to the person.'" *Id.* We discern a like intent in the Oklahoma legislature's use of a similarly broad provision for survival of causes of action for "injury to the person." Liberal construction dictates such a conclusion.

¶ 12 The court in *Harrison* also found survival of a cause of action for intentional infliction of emotional distress to be consistent with the modern theory and policy of tort law. The court noted that nonsurvival of torts at common law was linked to the view that "the recovery of damages was regarded as a matter of personal vengeance and punishment as between the transgressor and his victim [and that] death erased the purpose of a civil action between them." The court further noted that, "[w]hen the function of damages awards came to be recognized as compensatory rather than punitive, the reason for the rule [of nonsurvival] ceased to exist." The court concluded that "the passage of the Massachusetts Survival Statute in abrogation of the common law represents the Legislature's acceptance of this logic." Again, we discern a similar intent by the Oklahoma legislature to significantly depart from strict common law nonsurvival of tort claims by the enactment of section 1051 and its predecessor statutes.

¶ 13 Based on the foregoing, we hold that the legislature intended that a cause of action seeking damages for emotional distress for an insurer's bad faith in failing to timely pay a claim should survive the death of the insured as a cause of action for "injury to the person." We further hold that attorney fees and any other loss incurred by an insured to enforce the contract against the insurer's bad faith is "injury to ... personal estate" that would survive the insured's death. Like the court in *Spiker,* 802 P.2d at 652 (citation omitted), such detriment shows "[t]here clearly has been an injury whereby Plaintiff's personal estate has been diminished by the wrong."

¶ 14 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 15 STUBBLEFIELD, P.J., and RAPP, J., concur.