Lauriat, J.
Dale Lyon, Bernadette Lyon, and John Lovely (collectively, “the plaintiffs”) commenced this action against Triram Corporation, Hudson Liquid Asphalts, Inc., American Liquid Asphalts, Inc., Hudson Terminal Corporation, New England Emulsions, Inc., and All States Asphalt, Inc. (collectively, “the defendants”) seeking compensatory and punitive damages for the injury to and eventual death of Christopher Lyon (“the decedent”) in an asphalt plant *420 explosion on July 3, 2003. The defendants have now moved to dismiss Count III of the plaintiffs’ Second Amended Complaint, which alleges that the defendants committed unfair and deceptive acts and practices in violation of G.L.c. 93A. For the following reasons, the defendants’ motions to dismiss are denied.
BACKGROUND
The court takes the facts as set forth in the complaint as true for purposes of the defendant’s motions to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. Nader v. Citron, 372 Mass. 96, 98 (1977); LaCava v. Lucander, 58 Mass.App.Ct. 527, 530 (2003).
The decedent worked as an independent contractor in the areas of metal fabricating and welding. Defendants All State Asphalt, Inc., and its subsidiary New England Emulsions, Inc., along with Triram Corporation, American Liquid Asphalts, Inc., Hudson Asphalt, Inc., and Hudson Terminal Corporation formed a joint venture to manufacture and distribute asphalt at an asphalt plant in Framingham, Massachusetts (“the Framingham plant"). The defendants hired the decedent to perform welding and metal fabricating at various locations, including the Framingham plant. New England Emulsions and Triram started an asphalt manufacturing project at the Framingham plant using Tanks 404 and 405 from Holliston, Massachusetts. The parties obtained those tanks without obtaining proper permits or licenses and without taking proper safety precautions. Additionally, New England Emulsions participated in misleading municipal and state officials about the status, contents, and nature of the tanks at the Framingham plant.
Tank 405 at the Framingham plant contained volatile, explosive, and hazardous substances, and was installed, operated, and maintained in a condition that was unsafe and life-threatening. The defendants maintained and used these storage tanks in total disregard and in violation of safety regulations and statutes. Specifically, New England Emulsions, Inc., did not outfit the above-ground storage tanks at the Framingham plant with a device that would relieve excessive internal pressure; before welding, cutting, or heating the tank, it did not fill the tank with water, thoroughly clean, or ventilate the drums, containers, or hollow structures at the Framingham plant that contained toxic or flammable substances; and it did not develop or implement a hazard communication program at the Framingham plant.
The decedent worked on Tank 405 as well as on other tanks at the Framingham plant, but the defendants did not warn the decedent of the risks of the tanks and failed to disclose the inherent and life-threatening dangers of the contents of those tanks. The defendants also failed to train personnel with respect to the importance of taking actions to render the storage tanks at the site safe by making them inert or otherwise neutralizing them.
On July 3, 2003, the decedent was working on top of Tank 405 when it exploded and caught fire. The decedent was hurled approximately thirty feet to the ground. The decedent died on July 15, 2003, after experiencing considerable pain and suffering and incurring substantial medical and other expenses. The plaintiffs allege that as a result of the defendants’ unfair and deceptive acts and practices, the decedent suffered “serious harm and damages” including lost income, medical expenses, and damage to his equipment.
DISCUSSION
The defendants have moved under Mass.R.Civ.P. 12(b)(6) to dismiss Count III of the Second Amended Complaint on the ground that the G.L.c. 93A claim does not survive the death of the decedent, and, even if it did, G.L.c. 229, §§2 and 6 render the G.L.c. 93A claim duplicative. When evaluating a complaint’s sufficiency pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded factual allegations in the complaint and any reasonable inferences in the plaintiffs favor that may be drawn from the allegations. Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). The court can look only to the sufficiency of the complaint. It cannot consider any other materials the parties submit with their motions without turning the Rule 12 motion to dismiss into a Rule 56 motion for summary judgment. Mass.R.Civ.P. 12(b); Gibbs Ford, Inc. v. United Truck Leasing, 399 Mass. 8, 13 (1987).
A “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader, 372 Mass, at 98, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must give the complaint a generous reading and give the plaintiff the benefit of the doubt. New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988); Kipp v. Kuelcer, 7 Mass.App.Ct. 206, 210 (1979). A “rule 12(b)(6) motion is ordinarily not the proper vehicle for testing the factual sufficiency of a plaintiffs claims’!;] rather, a motion for summary judgment is more appropriate. Reardon v. Commissioner of Corr., 20 Mass.App.Ct. 946, 947 (1985); Wrightson v. Spaulding, 20 Mass.App.Ct. 70, 72 (1985).
I.
Section 1 of G.L.c. 228 (“the Survival Statute”) is a “flexibly drawn statute” that provides a “[non]exhaustive list of torts which . . . survive” the death of the injured party. Harrison v. Loyal Protective Life Ins. Co., 379 Mass. 212, 215 (1979). In relevant part, the statute provides that:
*421 In addition to the actions which survive by the common law, the following shall survive:
(2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property!.]
G.L.c. 228, §1(2).
In Harrison, the issue before the court was “whether an action in tort for the intentional infliction of emotional distress survives the death of the injured party.” 379 Mass, at 213. In concluding that the action did survive, the court held that the Survival Statute language referring to “other damage to the person” is not limited to physical injuries but can extend to mental and emotional damages as well. Id. at 213, 216-17. However, the Survival Statute does not apply to damages representing “personal vengeance and punishment as between the transgressor and his victim!.]” Id. at 216 (citation omitted). Rather, the Survival Statute is limited to compensatory damages. Id.
In contrast to Harrison, the Court in Pine v. Rust, 404 Mass. 411, 417-18 (1989), held that the plaintiffs’ action under G.L.c. 272, §99 (“the wiretap statute”), did not survive under G.L.c. 228, §1. “Although the privacy interests protected by the [wiretap statute] are real and significant, they are by their very nature lacking in clear definition and difficult to quantify . . . The right of action created by this statute is thus very different from those . . . [that] survive in the absence of specific statutory authorization.” Id. at 418. This difference is especially probative “where no actual damage has been sustained. In such circumstances the plaintiffs’ claim cannot be said to be one for ‘damage to the person’ that survives.” Id.
In fact, one of the purposes of “the civil remedies provision in G.L.c. 272, §99, ... is to encourage individuals to vindicate their rights under the statute.” Id. at 416 (emphasis added). Thus, as no actual damage had been sustained, the plaintiffs’ recovery under the wiretap statute would not be compensatory but punitive. See id. at 418. Pine v. Rust is therefore consistent with the principle set forth in Harrison that those claims seeking “personal vengeance and punishment” do not survive the death of the injured party. 404 Mass, at 416, 418; 379 Mass, at 216.
The defendants in the present case assert that the plaintiffs’ G.L.c. 93A claim is similar to a wiretap statute claim, in that a party alleging a claim under G.L.c. 93A need not demonstrate proof of harm in order to recover damages. Section 11 of G.L.c. 93A, states, however, that:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may . . . bring an action in the superior court. . .
Such person, if he has not suffered any loss of money or property, may obtain such an injunction if it can be shown that the aforementioned unfair method of competition, act or practice may have the effect of causing such loss of money or property...
If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence regardless of the existence or nonexistence of insurance coverage available in payment of the claim.
(Emphases added.) G.L.c. 93A, § 11 therefore provides for the recovery of monetary damages only where the plaintiff has suffered actual harm in the form of loss of money or loss of real or personal property. The statute anticipates those circumstances in which the plaintiff cannot establish that he has suffered any loss of money or property, and enables that plaintiff to seek injunctive relief rather than monetary damages. Id. Thus, unlike the wiretap statute, G.L.c. 93A, §11 requires that the plaintiff demonstrate that he suffered loss of money or property, real or personal, in order to recover monetary damages.
Also unlike the wiretap statute, the damages awarded under G.L.c. 93A, §11 are not meant to vindicate a plaintiffs rights. See Pine, 404 Mass, at 416. Rather, the terms of G.L.c. 93A, §11 demonstrate that the plaintiffs recovery is meant to compensate him for his loss of money or property. A claim for these damages therefore survives the decedent’s death.
II.
Section 11 also enables a plaintiff to recover attorneys fees. It provides that “[i]f the court finds in any action commenced hereunder, that there has been a violation of section two [of G.L.c. 93A], the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in said action.” Thus, to receive attorneys fees, “ ‘a plaintiff must be entitled to relief in some other respect . . .’ A plaintiff gets no bounty in the form of *422 attorneys fees ‘for merely identifying an unfair or deceptive act or practice. Under §11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars.’ ” Martha’s Vineyard Auto Village, Inc. v. Newman, 30 Mass.App.Ct. 363, 370 (1991), quoting Jet Line Servs., Inc. v. American Employers Ins. Co., 404 Mass. 706, 718 (1989) (recognizing that, by its terms, G.L.c. 93A, §11, indicates “that relief solely in the form of attorneys fees may not be had”).
It is important... to keep in mind that, while G.L.c. 93A provides for penalty damages in the event of “wilful and knowing violations of §2,” the penally finds expression in a doubling or trebling of actual damages resulting from the §2 violation, not in awards of attorneys fees that exceed what is reasonable in the circumstances. Thus, attorneys fees are not thereunder the subject of doubling or trebling, so as to become punitive.
Rex Lumber Co. v. Acton Block Co., Inc., 29 Mass.App.Ct. 510, 522 (1990). Thus, the plaintiffs’ Count III claim for attorneys fees also survives the decedent’s death. See Gordan v. Archer, 1999 Mass.App.Div. 154, *2 (1999) (“In view of the compensatory character of [attorney’s] fees, the claim for attorneys fees [under G.L.c. 93A] and the award of the same against the defendant. . . survived the death of the plaintiff’).
III.
General Laws c. 93A, §11 permits double and treble recovery if the defendant willfully or knowingly committed the unfair or deceptive act or practice. However, since multiple damages are intended to vindicate a plaintiffs rights, such a claim for punitive damages does not survive the decedent’s death. See Harrison, 379 Mass, at 216; Gordan, 1999 Mass.App.Div. at *2.
Accordingly, the plaintiffs’ claim under G.L.c. 93A, §11, against the defendants survives the decedent’s death insofar as Count III seeks compensatory damages for loss of money or property, real or personal, as well as for attorneys fees. Insofar as Count III seeks double or treble damages or damages not related to loss of money or property, that claim does not survive the decedent’s death and must be dismissed.
IV.
The defendants next contend that even if Count III survives the decedent’s death, it is preempted by the claims set forth in Count I of the Second Amended Complaint brought pursuant to G.L.c. 229, §2 (recovery of damages for wrongful death), and G.L.c. 229, §6 (recovery of damages for conscious suffering). “The wrongful death statute provides for a single action brought by the decedent’s executor or administrator.” Hallett v. Town of Wrentham, 398 Mass. 550, 555 (1986). “[T]here can be only one plaintiff in a wrongful death action who asserts all claims by the designated category of beneficiaries for damages resulting from wrongful death.” Id. at 556. A defendant found liable under the G.L.c. 229, §2, is responsible for
(1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered . . . , including but not limited to compensation for the loss of the reasonably expected net income, services protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent; (3) punitive damages in an amount of not less than five thousand dollars in such case as the decedent’s death was caused by the malicious, willful, wanton or reckless conduct of the defendant or by the gross negligence of the defendant.
G.L.c. 229, §2. Further, a plaintiff may also recover damages “for conscious suffering resulting from the same injury . . .” G.L.c. 229, §6.
The allegations in Count I with respect to the defendants’ conduct are similar to those alleged in Count III. The defendants allegedly failed to exercise due care, acted with gross negligence, and acted willfully, wantonly, and/or recklessly in engaging in that conduct. As a result of that conduct, the decedent experienced conscious suffering from July 3, 2003, the date of the accident, through July 15, 2003, the date of his death.
Insofar as Count III seeks damages for the decedent’s lost wages, medical expenses, and equipment damage, there is no duplicative recovery sought and Count I does not preempt it. Insofar as Count III seeks recovery for the physical harm to the decedent between July 3 and July 15, 2002, that claim is preempted by Count I pursuant to G.L.c. 229, §6. Finally, since Count III seeks damages incurred prior to the decedent’s death, it does not overlap with G.L.c. 229, §2, which provides for the recovery of losses resulting from the decedent’s death. Accordingly, while the scope of Count III will be narrowed at trial, Count I does not preempt it, and the defendants’ motion to dismiss Count III is denied.
ORDER
For the foregoing reasons, the Motion of Defendants All States Asphalt, Inc. and New England Emulsions Corp. to Dismiss Count III of Plaintiffs’ Second Amended Complaint is DENIED, and the Motion of Defendants, Triram Corporation, Hudson Liquid Asphalts, Inc., American Liquid Asphalts, Inc., and Hudson Terminal Corp. to Dismiss Count III of Plaintiffs’ Amended Complaint is also DENIED.