STEPHEN HERNON, executor,[1] & others[2] *vs.* CHRISTINA
HERNON, administratrix.[3]

No. 08-P-899.

Middlesex. February 3, 2009. - June 25, 2009.

Present: LENK, CYPHER, & COHEN, JJ.

*Practice, Civil,* Standing. *Probate Court,* Parties, Standing. *Will,* Undue
influence. *Survival of Action.*

A probate judge did not commit an abuse of discretion by denying an executor's
    motion to strike the appearance of a party objecting to a will, or in allow-
    ing that party's motion to amend her appearance to reflect a change in her
    status as administratrix of the estate of her father, the testator's brother.
    [493-494]
This court concluded that a party's right to contest a testator's will was a
    property right that vested in the party upon the testator's death and survived
    the party's subsequent death, such that the party's administratrix could as-
    sert the claim on behalf of the party's estate within the applicable statutory
    period. [494-497]
The record of a probate proceeding revealed ample evidence to support the
    judge's conclusion that the named executor of a will had exercised undue
    influence over the testator in that will's creation, and there was no merit to
    the executor's argument that the judge improperly shifted the burden of
    proof on this issue to the executor. [497-499]

PETITION filed in the Middlesex Division of the Probate and
Family Court Department on October 18, 2005.

The case was heard by *Robert W. Langlois,* J.

*Jennifer E. Greaney (Francis J. Sally* with her) for the
plaintiffs.

*Marc D. Padellaro (Suzanne M. Morse* with him) for the
defendant.

---

[1] Of the estate of John M. Hernon.

[2] Molly E. Hernon; Heather K. Renzi; James M. Patterson; and Cynthia A.
Hernon Coffman.

[3] Of the estate of Peter C. Hernon.

LENK, J. John Hernon died on September 19, 2005, leaving a last will and testament dated July 21, 2005. The will provided that the entirety of his estate would go to the four daughters of his brother, Stephen Hernon. The testator's niece Christina, daughter of a second brother, Peter Hernon, objected to the will, claiming that it was the product of undue influence. After trial, a Probate and Family Court judge agreed, concluding that Stephen Hernon had exercised undue influence over the testator. Stephen, the named executor of the will, now appeals, claiming that the contestant, Christina, lacks proper standing to contest the testator's will, that the judge improperly shifted the burden of proof to Stephen, and that the judge's findings are clearly erroneous. We affirm.

1. *Background.* The late John Hernon had no children and never married. He was one of four brothers, and his brother Joseph, who also had no children, predeceased him. His brother Peter had two sons, Nicholas and Patrick, and one daughter, Christina. All three of Peter's adult children were expressly omitted from the testator's will. At the time the will was written, the testator's brother Stephen had four adult daughters (one of whom, Melissa,[4] was his wife's child from a previous marriage), to whom the testator's will left the entirety of his sizeable estate in equal shares.

2. *Standing.* a. *Individual standing.* On November 29, 2005, the return day for the testator's will, Christina filed an appearance on her own behalf that was timely under Rule 2 of the Rules of the Probate Court (2006). However, because Christina's father, the testator's brother Peter, was alive at the time of the testator's death on September 19, 2005,[5] Christina was not the testator's heir at law when he died, and therefore lacked standing to object individually to the will. *Frilich* v. *Alstein*, 3 Mass. App. Ct. 720, 720 (1975) (niece and nephew of decedent "were not next of kin," and therefore niece and nephew "lacked standing as interested persons, either to bring or oppose a petition for administration of this estate"). Nevertheless, Christina filed an affidavit of objections to the will on or about December 28, 2005.

---

[4]Now deceased.

[5]Peter died on November 21, 2005, eight days before the return day for the testator's will.

Stephen subsequently moved to strike that affidavit, along with her filed appearance. The parties, however, later agreed to remove that motion from the hearing list and proceeded to trial.[6]

After trial, Stephen again moved to strike Christina's appearance and moved for a new trial, whereupon Christina opposed those motions and moved to amend her appearance, so as to reflect her status as administratrix of her father Peter's estate. The judge allowed Christina's motion to amend her appearance and denied Stephen's posttrial motion to strike and motion for a new trial,[7] essentially holding that Stephen was estopped from bringing a standing challenge posttrial, as he chose to withdraw his original motion and proceed to trial, and as "no harm has inured to either party as a result of Christina's status."

We discern no abuse of discretion in the judge's rulings, and thus proceed as though Christina had properly objected ab initio to the will in her capacity as administratrix of Peter Hernon's estate. See *Quimby* v. *Zoning Bd. of Appeals of Arlington*, 19 Mass. App. Ct. 1005, 1007 (1985) ("fact that the original plaintiff may not have had standing or presumptive standing . . . is not a reason for denying an amendment to allow the substitution of parties who have standing"); Rule 7 of the Rules of the Probate Court (2006) ("The Court in its discretion may allow the parties to amend their pleadings . . . or any act to be done . . . and may in all cases impose just and reasonable terms upon the parties").

b. *Standing as administratrix of Peter's estate.* Stephen next argues that Christina does not have standing in her capacity as the administratrix of her father's estate because her father Peter was alive for approximately five weeks after the testator's will was submitted to probate[8] and the guardian of his estate did not

---

[6]We note that Stephen's own failure to pursue this standing challenge at the outset of the case disposes of his argument that upholding the judge's ruling would generally allow appearances to be entered "many months after the Return Day."

[7]To the extent Stephen claims the judge erred in denying his revised motion for leave to file supplemental documents in support of his motion for a new trial, we consider the issue to be waived as it fails to rise to the level of appellate argument required by Mass.R.A.P 16(a)(4), as amended, 367 Mass. 921 (1975).

[8]The will was submitted to probate on or about October 12, 2005, and as previously noted, Peter died on November 21, 2005.

contest the will during that period.[9] Stephen argues that an unasserted will contest does not survive a party's death and, therefore, that Peter's right to contest the will died with Peter. Christina argues the opposite, maintaining that a will contest, even an unasserted one, is a property right that descends to the party's estate upon death.

Whether an unasserted will contest survives death is a novel question in this State. In *Sheldone* v. *Marino*, the Supreme Judicial Court recognized that "a will contest is in the nature of a property right and, thus, survives the contestant's death." *Sheldone* v. *Marino*, 398 Mass. 817, 819 (1986) (will contest actions survive death even in the absence of statute). Contrast *Pine* v. *Rust*, 404 Mass. 411, 417-418 (1989) (privacy interest violated by wiretap is ephemeral personal right and does not survive death in absence of statute). In *Sheldone*, unlike here, the will contestant had filed an objection prior to his death, and thus the *Sheldone* court addressed only the survival of an asserted will contest. Nonetheless, the court made no attempt to confine its ruling *only* to asserted will contests. Instead, it relied on "the analysis of several other jurisdictions," none of which purport to limit the survival of will contests only to those asserted during a contestant's lifetime; indeed, the cases suggest the opposite.[10] Most importantly, the *Sheldone* court thought persuasive and relied upon

[9]Peter was incapacitated in the last years of his life, with Christina serving as the guardian of his person and a court-appointed attorney serving as the guardian of his estate. During deposition, the guardian of Peter's estate admitted that she "tried . . . not to get involved in the personal issues between the family members," and had never spoken directly to the testator, but that she chose not to challenge the testator's will because she "knew that John knew Peter was sick, and there was no reason for me to question John's decision not to put Peter in the will."

[10]See *Crawfordsville Trust Co.* v. *Ramsey*, 178 Ind. 258, 271-272 (1912) (a son, who had not filed a contest against his father's will before dying himself, had "a 'cause of action' at common law against anyone holding possession of his property by virtue of [his father's] invalid will, and it follows that, under our statute, this cause of action survived, and [the son's] heirs had the right to contest the will"); *Hall* v. *Blackard*, 298 Ky. 354, 358 (1944) ("the right to contest a will, if unrelinquished by its immediate possessor through his acceptance of benefits thereunder, or otherwise, survives his death"); *Kinsella* v. *Landa*, 600 S.W.2d 104, 107 (Mo. App. 1980) ("the right to contest a will . . . has become a substantial property right that survives its owner and is exercisable by his personal representative or heirs"); *In re Morrow's Will*, 41 N.M. 723, 737 (1937) ("if appellants are heirs at law of [the testator] . . . they are 'persons interested,' . . . though they succeeded to their father's

the analysis of *In re Estate of Field,* a California Supreme Court case which upheld the validity of an unasserted will contest. See *In re Estate of Field,* 38 Cal. 2d 151, 154 (1951). Given the *Field* court's express language that "no such distinction may be made" between an asserted and an unasserted will contest, *id.* at 155, we may presume the omission of any limiting language in *Sheldone* to have been intentional. We now take the logical step of adopting the reasoning of *In re Estate of Field,* and conclude that "[s]o long as the right survives as a right of property, the result may not be made to depend on whether the contest was commenced before the owner of the right died." *Ibid.*

Our decision today also comports with the spirit of G. L. c. 228, § 1,[11] which, as the court in *Sheldone* stated, "does not operate to restrict the types of actions which survive but was intended to expand on the number of actions which do survive." *Sheldone* v. *Marino, supra* at 819. In concluding that a will contest is one of the "actions which survive by the common law," under G. L. c. 228, § 1, the *Sheldone* court noted that its decision "is in accord with the decision in *Harrison* v. *Loyal Protective Life Ins. Co.,* [379 Mass. 212, 215 (1979)]." *Ibid.* In *Harrison,* the Supreme Judicial Court held that an action in tort for intentional

---

interest [if any] in such estate after the probate of the contested will"); *In re Estate of Riggs,* 120 Or. 38, 42 (1926) ("[will and will contest] had in effect passed the title to all the property of the deceased Riggs to the widow, and to that extent, it was an asset of her estate, which her heirs had a right to litigate"); *Ingersoll* v. *Gourley,* 72 Wash. 462, 472 (1913) (interest in will "no sound reason . . . for limiting the right to protect this interest by contest to the person in whom it is vested at the date of the testator's death").

[11]That statute reads: *"In addition to the actions which survive by the common law, the following shall survive: —*

"(1) Actions under chapter two hundred and forty-seven;

"(2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property; and

"(3) Actions against sheriffs for the misconduct or negligence of themselves or their deputies." (Emphasis supplied.)

G. L. c. 228, § 1, as amended through St. 1975, c. 337, § 62.

infliction of emotional distress survived the injured party's death under G. L. c. 228, § 1, such that the injured party's widow, in her capacity as administratrix of her deceased husband's estate, could proceed with the cause of action. *Harrison* v. *Loyal Protective Life Ins. Co.*, *supra* at 219. After conducting a statutory analysis, the court in *Harrison* concluded that a party's vested property rights to bring a cause of action survive his death. The court did not limit this survivability principle to only those actions commenced before the party's death. We therefore hold that Peter's right to contest the testator's will, a property right which vested in Peter upon the testator's death, survived Peter's subsequent death, such that Christina could assert the claim on behalf of Peter's estate within the statutory period.

3. *Burden of proof and validity of judge's findings.* Stephen correctly points out that it was Christina's sole burden at trial to prove all the elements of the undue influence claim, namely "that an (1) unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means." *O'Rourke* v. *Hunter*, 446 Mass. 814, 828 (2006), quoting from *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 464 (1997). After careful review of the record, we cannot say that the judge shifted this burden onto Stephen in any way, or that the judge's findings were clearly erroneous, particularly given his explicit credibility determinations. See *Matter of the Estate of Moretti*, 69 Mass. App. Ct. 642, 650-651 (2007) (findings will not be set aside unless clearly erroneous).

a. *Unnatural disposition.* Stephen argues that Christina failed to meet her burden of showing that an unnatural disposition occurred here. He contends in this regard that, because Christina never put the issue of the testator's relationship with Melissa (Stephen's stepdaughter) in issue, the judge could not have properly found that the testator's bequest to Melissa was unnatural. Stephen takes too narrow a view of the evidence. The judge specifically credited Christina's testimony that blood relations meant a great deal to the testator and that he had strong feelings about the fact that his nephews Nicholas and Patrick were the sole males to carry on the Hernon name. The judge also found cred-

ible the affidavit and testimony of the testator's long-time friend Arthur Roach, who related that he had had many conversations with the testator about the testator's estate plan, during which time the testator had always expressed his intent to split his estate evenly between both Peter's and Stephen's children. Based on this credible testimony, the judge could properly conclude that the testator's exclusion of his nephews Nicholas and Patrick, as heirs to the Hernon name, made the disposition unnatural on the whole, regardless whether Melissa's inclusion was also unnatural.

b. *Susceptibility to undue influence.* Stephen also suggests that the testator was not susceptible to undue influence, pointing both to testimony by the testator's attorney that the testator was strong-willed as well as evidence that the testator was known to ignore medical advice. The judge, however, viewed the testator's tendency to check himself out of hospitals against medical advice as evidence of his "deep desire to remain in his own home" and his "significant dislike of nursing homes and hospitals," rather than as conclusive evidence that he was not susceptible to undue influence. The judge credited Roach's testimony that the testator believed he had "no other choice" than to have Stephen move into his home to care for him, despite the "distant and strained" relationship the two shared, supporting the view that the testator felt quite dependent upon Stephen. Once installed in the testator's home, Stephen drove the testator to many of his appointments, including the July 21, 2005, appointment at his lawyer's office, two months before he died, to execute his will. The judge also found credible testimony by Joseph Hernon's widow that Stephen refused to put the testator on the phone with some of his friends when they called in August of 2005, and that John had expressed fear of Stephen's anger, quickly hanging up the phone on Roach when he heard Stephen approaching. Insofar as these challenged findings are supported by evidence the judge deemed credible, Stephen has not shown them to be clearly erroneous and the judge could properly find the testator was susceptible to undue influence by Stephen.

The judge also specifically credited Roach's testimony that he had a telephone conversation with Stephen (shortly before the testator's death and while Stephen was living with the testator) wherein Stephen stated, "John will do exactly what I want when

it come[s] to his will or I'm out of here." Conversely, the judge generally did not find Stephen to be a credible witness and specifically did not believe his testimony to the effect that he did not recall making this statement. The judge also credited Roach's testimony that the testator believed Stephen "was always concerned with, and had a 'lust' for money," and noted that Stephen had pursued legal claims against the estates of two other relatives.

c. *Opportunity to exercise undue influence and exercise in fact.* Stephen undisputedly lived alone with the testator in the last months of his life while the testator was in frail and failing health, which gave Stephen ample "opportunity to exercise undue influence" over the testator. *O'Rourke* v. *Hunter*, 446 Mass. at 828. Combined with the aforesaid evidence, we conclude there was evidentiary support sufficient to sustain the judge's determination that Stephen in fact exercised this opportunity, such that the testator's will was the product of undue influence exerted upon the testator by Stephen.[12]

*Conclusion.* Because an unasserted will contest survives a party's death, Christina Hernon's claim on behalf of her father Peter's estate was proper. As our review of the record also reveals ample evidentiary support to meet all four elements of an undue influence claim, we now affirm the ruling of the Probate and Family Court judge below and conclude that Stephen Hernon did exercise undue influence over the testator in the creation of the testator's July 21, 2005, last will and testament.

*Judgment affirmed.*

---

[12]The fact that Stephen did not take personally under the will, but will take half of the testator's estate through intestacy if the will fails, does not foreclose any argument that he exercised undue influence to procure the will, which left the entirety of the estate to his four daughters. A finding of unnatural disposition does not require the influencer to take personally under the will, and this court has allowed for the possibility that the influencer may seek to procure a will that is favorable to another. *Baxter* v. *Grasso*, 50 Mass. App. Ct. 692 (2001) (reversing and remanding trial court finding of no undue influence where executrix may have influenced testator to write will benefiting executrix's nieces).