Hopkins, Merita A., J.
This matter is a claim of undue influence by the plaintiff Giuseppe D’Amico (“D’Amico”) against the defendant Anna MacMillan (“Anna”). D’Amico is the father of Anna. D’Amico alleges that Anna exercised undue influence on D’Amico when he deeded the property at 73 Swifts Beach Road, Wareham, Massachusetts (“73 Swifts Beach Road”), to Anna on August 17, 2010.
The complaint alleges fraud, deceit, undue influence, and misrepresentation (Cause of Action I) and inadequate compensation, unjust enrichment, and lack of consideration (Cause of Action III) against the defendant.
A jury-waived trial was heard on July 18-22, 2013. At the beginning of trial, the plaintiff expressed the intent to primarily move on the claim of undue influence. At the close of the plaintiffs evidence, a directed verdict was allowed on the claims of fraud, deceit and misrepresentation with the agreement of the plaintiff. At the close of all the evidence, the claims for inadequate compensation, unjust enrichment, and lack of consideration were dismissed by agreement of plaintiff and defendant.
The following findings are made after consideration of all the evidence and from the evidence found credible by this court.
Findings of Fact
D’Amico was bom in Sicily on 7/16/30. At the time of this matter he was eighty (80) years of age. D’Amico had five years of formal education.
At the age of twenty-five, D’Amico was employed as a merchant marine and worked in the kitchen and serving areas of the ship. In 1955, while in port in Philadelphia, D’Amico jumped ship and traveled to the West End of Boston. He worked for an uncle as a fruit vendor. He then became employed as a factory worker at the NECCO candy factory. Thereafter, he worked as a stitcher for Trimount Clothing.
Within approximately four years, D’Amico went to work in a pizza establishment at 329 Washington Street, Brighton and became the owner. D’Amico prepared the food and ran the operations of the business. The restaurant is known as Imperial Pizza and it remains in the family today, with D’Amico’s nephew Giuseppe Greco and great nephew Salvatore Greco.
D’Amico remained in the Boston area from 1955 through 1982. Throughout that time he actively bought real estate.
His first purchase was a residence in Somerville. This purchase was made with his sister.
His second purchase was another residence in Somerville. He used this building for rental units.
He then purchased a block of commercial property in Brighton Center—the area of Imperial Pizza. These purchases were made with a partner.
In 1975 D’Amico purchased 73 Swifts Beach Road for the family summer residence. D’Amico’s wife was also listed on the deed.
Shortly after D’Amico had arrived in Boston, he married his wife Josephine (“Mrs. D’Amico”). At the time of their marriage, Mrs. D’Amico was employed in a hospital as a bookkeeper. She had attended a comp-tometer school and was trained as an adding machine operator and bookkeeper. After the marriage, Mrs. D’Amico has done the bookkeeping for D’Amico’s business ventures and personal accounts, except for a period of time in Florida when he owned multiple business establishments.
While D’Amico and Mrs. D’Amico lived in the Boston area they had three daughters, Josephine (“Josephine”), Donna (“Donna”) and Anna. During the years 1975-1982, Mrs. D’Amico and the children would spend the summer at 73 Swifts Beach Road in Wareham and D’Amico would travel to work in Boston.
In 1982 D’Amico relocated to Florida with his wife and daughters Josephine and Donna. For a period of time, Anna remained in Somerville and D’Amico provided her with one of his rental units. She did not pay rent. Thereafter, Anna and her husband William Mac-Millan (“William”) relocated to Florida. Anna and William moved to Florida to help with D’Amico’s new restaurant ventures.[2] William would work for D’Amico in Florida for the next fifteen years. While in Florida, Anna and William had three children, Joseph, Dan-iella and Destina.
In Florida, D’Amico established additional commercial ventures and acquired residential property for family members.
Between 1983 and 2009, D’Amico acquired and sold four businesses.
*469 In 1983, he opened Francesco’s Restaurant. It was an Italian restaurant. D’Amico ran the operational end of the business to include cooking and managing the kitchen. D’Amico ordered all the food and wine. He was in charge of getting the food orders filled and he was the owner that would interact with the customers. There were four partners in this business: D’Amico, Mrs. D’Amico, another partner and his wife. In 2009, this restaurant was sold for approximately $1,400,000. All four partners each received 25% of the sale.
In 1985 D’Amico bought another restaurant. He ran the business under the name Key Largo. He also bought another pizza store and ran the business under the name Venezia. These establishments were sold in 1989-1990 for approximately $700,000.
At some unspecified time, D’Amico bought another pizza establishment and then sold it to the abutter.
D’Amico also has a 25% ownership in a billboard investment.
Beginning in 1983, D’Amico also made a series of residential purchases and/or transactions in Kissimmee, Florida.
The first purchase was for a family home at 4901 Lake Cecile Drive, Kissimmee, Florida.
The second purchase was a residence at 4886 Lake Cecile Drive, Kissimmee, Florida. This home was located diagonally across the street from D’Amico. Anna and her family used this as their home when they relocated to Florida.
D’Amico bought 4950 Lake Cecile Drive, Kissimmee, Florida for his own home in preparation for a divorce from Mrs. D’Amico.
On or about 1992, Anna moved to D’Amico’s home at 4950 Lake Cecile Drive. At that time, Anna deeded 4886 Lake Cecile Drive to D’Amico (and Mrs. D’Amico) for consideration of $10.00. Anna prepared this deed, as directed by D’Amico, and Donna was a witness.
D’Amico deeded the residence at 4886 Lake Cecile Drive to another daughter after Anna moved out.
D’Amico purchased another lot and house at 4870 Lake Cecile Drive, Kissimmee, Florida. D’Amico deeded this to Anna for her family home.
Additionally, in 1990 Anna and William deeded a lot referred to as “The Forest” to D’Amico for consideration of a personal loan. The deed was prepared by Anna, as directed by D’Amico, and witnessed by Donna and Josephine. D’Amico deeded the properly back to Anna and William in 1992 for consideration of $1.00. The deed was prepared by Anna, as directed by D’Amico.
D’Amico also provided his daughter Donna with a condominium when she attended law school.
D’Amico provided mortgage payments and car payments to his daughter Josephine prior to her divorce.
D’Amico and his wife obtained a divorce in 1989. Further properly dispositions occurred as a result of the divorce. Mrs. D’Amico kept one home at 4901 Lake Cecile Drive and deeded her portion of 73 Swifts Beach Road to D’Amico in 1988. D’Amico kept two homes, one located at 4950 Lake Cecile Drive and one located at 73 Swifts Beach Road.
After moving to Florida, the family had continued to use 73 Swifts Beach Road as a summer vacation home. However, starting in 1988 D’Amico spent May through September at 73 Swifts Beach Road. He rented the first floor of the home until 2005.
In 2005, Anna moved to 73 Swifts Beach Road with her husband and children. D’Amico had encouraged Anna to move back to Massachusetts and live at 73 Swifts Beach Road, due to her health. Anna and her family were not required to pay rent and D’Amico no longer rented the first floor.
D’Amico continued to spend four months of summer at Swifts Beach Road with Anna and her family. There was a first floor area set off for his exclusive use. He would regularly discuss building a house on land adjacent to the house at 73 Swifts Beach Road, owned by D’Amico. D’Amico regularly discussed his desire that Anna’s children, particularly Daniella, have a house next to 73 Swifts Beach Road.
After Daniella married, D’Amico talked about deeding the property to Anna. His conversations increased about Anna’s children living next door. Prior to the summer of 2010, D’Amico went to the Registry of Deeds to get a land description and determine whether the adjacent lot was buildable. D’Amico had Anna accompany him. D’Amico determined that the adjacent lot was grandfathered and that a house could be built as long as it was attached to the present home at 73 Swifts Beach Road.
Prior to this, D’Amico signed a will in 2009 reflecting his desire that 73 Swifts Beach Road should go to Anna or her heirs. D’Amico provided terms by which Anna inherited a percentage of the property and then outlined a payment program to acquire her sisters’ proportionate shares.[3] The will also reflected D’Amico’s desire that Anna’s children should inherit Anna’s share under the will.[4]
In 2010 D’Amico returned to spend the summer at 73 Swifts Beach Road. Daniella and her husband were returning to Massachusetts after a militaiy assignment in El Paso, Texas. D’Amico did not want Daniella paying rent to someone else when he could build a house for her on the adjacent lot. D’Amico wanted to deed the property to Anna and he instructed Anna to purchase a quitclaim deed form during July 2010. Anna purchased the form and D’Amico wanted her to fill it out, but Anna put off the conversation.
During this same period of time, Anna observed that her father was not feeling well. She also observed that his legs were swelling. Anna wanted D’Amico to *470 get medical help. She also wanted him to return to Florida because he only had medical insurance in Florida. Anna called her mother in Florida for help, and Mrs. D’Amico asked D’Amico to come home to Florida and address his medical problems. D’Amico refused to listen to anyone. He wanted to attend the wedding of a cousin’s son. He would not get medical care and he would not return to Florida. Instead, he went to the wedding against his family’s advice.
On August 10, 2010 Anna brought her father to the emergency room at the Tobey Hospital in Plymouth after he returned from the wedding. His legs were excessively swollen and he was struggling to walk and breath. He was immediately admitted into ICU and was not discharged for eight days.
D’Amico was diagnosed with congestive heart failure and a kidney/renal problem. A review of his hospital record shows that he was primarily treated for water retention and blood thinner for congestive heart failure. D’Amico’s prior medical condition reflected obesity, diabetes, and skin cancer. The medical records indicate that D’Amico was fully consulted and engaged with his treatment. On admission he clearly advised medical staff that he wanted to try everything to get better and he wanted to be resuscitated in case of cardiorespiratoiy arrest. In fact, the doctor’s notes indicated that D’Amico was “very verbose.” The hospital records show D’Amico to be consistently alert and oriented. Most importantly, on August 17, 2010 the records reflect that D’Amico was alert, oriented, not confused, not disoriented and that his mental status was oriented. D’Amico was discharged on August 18, 2010 with instructions to follow up with his primary care physician in Florida.
Throughout his hospital stay, he was visited throughout the day by Anna, William, and Mrs. D’Amico and a grandson who had flown from Florida to be with him. D’Amico was also engaged with others as reflected by his telephone records that record 139 phone calls placed by D’Amico during his stay in the hospital.
While in the hospital, D’Amico continued his previous conversations regarding giving 73 Swifts Beach Road to Anna. He insisted that Anna fill out the quitclaim deed form to transfer the property from D’Amico to Anna. In response to his demands, she brought the blank form to him on August 16. He wanted her to fill it out but she delayed it by telling him she did not have a description of the property. D’Amico told Anna he had a description of the properly in his personal papers at the house. D’Amico instructed Anna to retrieve the document and bring it to the hospital. On August 17, Anna brought the land description to the hospital. D’Amico instructed Anna to fill out the quitclaim deed with the assistance of her mother Mrs. D’Amico. The deed was filled out in the presence and direction of D’Amico.
In order to complete the transaction, they needed a notary and witness. It was late in the afternoon and people were hungry. Anna suggested that they wait until he was discharged and she could bring him to the local bank for a notary and a witness. D’Amico refused. Instead, D’Amico had them wait approximately two hours for a notary from the hospital staff to acknowledge the deed. Additionally, a nurse in attendance witnessed the signing of the deed. Both notary and nurse discussed the transaction with D’Amico and observed him prior to the signatures. They were both satisfied D’Amico fully understood the transaction and was making his own decisions regarding the real estate transfer. The quitclaim deed was signed by D’Amico and 73 Swifts Beach Road was transferred to Anna for consideration of love and affection on August 17, 2010.
D’Amico was discharged on the following day. Anna had not filed the deed at the Registry and D’Amico wanted her to do so. D’Amico continued to ask her when she was going to Plymouth (the Registry of Deeds office). In response, Anna filed the deed on August 20, 2012 and showed her father the stamped deed. He responded, “Okay, now I’m happy.” After the transfer, D’Amico sent Anna the water and tax bills for the property.
D’Amico remained at 73 Swifts Beach Road for another two weeks before returning to Florida. He talked about extending the kitchen and making a deck on the back of the house.
D’Amico returned to Florida and lived with Mrs. D’Amico at her home on 4901 Lake Cecile Drive. Mrs. D’Amico had continued to provide companionship to D’Amico with food shopping and rides to medical appointments since their divorce. She also continued to handle his personal bookkeeping. Now, Mrs. D’Amico provided care for D’Amico in her home. D’Amico required follow up care and received a pacemaker implant in Florida.
The family remained close. Mrs. D’Amico shared her home with Josephine and her two grandsons Joseph and Michael. Donna lived on the same street at 4886 Lake Cecile Drive. D’Amico’s home was also on the same street and he was now staying at Mrs. D’Amico’s home with his daughter and grandsons. Anna was living in Wareham and D’Amico talked daily about building the house for Daniella. D’Amico was in daily contact with his two daughters Josephine and Donna, both at their place of business and at home.
During March 2011 D’Amico prepared to go back to Wareham for the summer with Anna. In response to this plan, Mrs. D’Amico, Josephine, Donna and Anna all asked him not to take the trip that summer due to his health. He continued to have medical problems with his kidneys and diabetes and he had no medical insurance in Massachusetts. All of them were united in telling D’Amico that he needed to stay in Florida for that summer. Anna expressed a concern *471 that he had no insurance for outpatient care and she didn’t want the situation where he could only be cared for in the emergency room.
D’Amico was belligerent in response to their effort to have him remain close to his health care providers with access to medical insurance coverage. D’Amico did not want anyone telling him what to do and he wanted the freedom to go to Wareham on his own terms. He told Anna “I don’t give a shit if I drop dead there,” to which she responded, in kind, that she did care.
D’Amico began to tell Josephine and Donna that he never deeded the house to Anna. Josephine responded by saying that he always said the house in Wareham belonged to Anna. Donna responded by pulling up a copy of the deed from public records on the computer and showing it to D’Amico.[5] She asked her father if that was his signature and he said “Yes.” She asked why he was lying and he left her house without responding. As D’Amico’s behavior escalated, Josephine asked him to move out of her mother’s house.
In May 2011 Anna received a letter from a lawyer on behalf of D’Amico requesting the return of the house. In August 2011 D’Amico filed this lawsuit.
Mrs. D’Amico stopped seeing her husband when the lawsuit was filed.
Since filing the lawsuit, he has told Josephine and Donna that he cannot drop the lawsuit because he owes money to his nephew Aldo Cavello. Both daughters stopped taking calls from their father in 2012.
Throughout the trial, D’Amico’s testimony in support of his claim is that he does not remember anything for the entire time he was admitted to the Tobey Hospital from August 10 throughAugust 18, 2010. He also stated that he does not know how Anna took his house. For all the reasons enumerated above, this court does not find the plaintiff Giuseppe D’Amico’s testimony credible or reasonable.
The transfer of 73 Swifts Beach Road from D’Amico to his daughter reflected the normal pattern and circumstances of residential property transfers within the D’Amico family. D’Amico was the patriarch of the family. In that position, he made the decisions regarding where members of the family lived, and the residences were provided according to his directions. It is clear that family harmony was maintained by responding to D’Amico on his terms, whether it was accepting his numerous telephone calls on a daily basis at home and work, or having his presence in one’s home on a daily basis, or working for him, or living in locations selected by D’Amico.[6]
D’Amico is an experienced businessman. He has managed and owned numerous restaurant establishments. His wife, Mrs. D’Amico has served at various times in a clerical position as bookkeeper, but there is no inference that she exercised any decision making in D’Amico’s professional or personal business. He has successfully developed businesses and sold them. The last sale for $1.4 million was transacted within one year of the deed transaction in this matter.
D’Amico has a history of instructing Anna to draft deeds involving land transfers between him and Anna. Attorneys were never used in these transfers. D’Amico does not dispute the prior three deed transfers where Anna prepared the deeds. The quitclaim deed of 73 Swifts Beach Road from D’Amico to Anna is no different from the prior practices. D’Amico made a decision to transfer property for the residential use of his daughter and her children. The deed was drafted and executed under D’Amico’s direction with his full participation and knowledge.
Rulings of Law
The sole legal issue before the court is whether D’Amico’s deed transfer of 73 Swifts Beach Road to Anna was procured by undue influence. If the deed was procured by undue influence D’Amico may avoid the transfer and retain ownership of the property. Howe v. Palmer, 80 Mass.App.Ct. 736, 740 (2011). The burden of establishing undue influence is normally on the party challenging the validity of the transaction. Id. However, the burden shifts when the parties stand in a fiduciary relationship. See Cleary v. Cleary, 427 Mass. 286, 290 (1998). Here, the burden of establishing undue influence by a preponderance of the evidence lies firmly on D’Amico because Anna does not owe D’Amico a fiduciary duty.[7]
“Undue influence involves some form of compulsion which coerces a person into doing something the person does not want to do.” Tetreaultv. Mahoney, 425 Mass. 456, 464 (1997). Aparty must demonstrate four elements to establish undue influence, namely that (1) an unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through improper means. O’Rourke v. Hunter, 446 Mass. 814, 828 (2006); Howe, 80 Mass.App.Ct. at 740.
(1) Unnatural Disposition
The deed of 73 Swifts Beach Road was not an unnatural disposition. Caselaw reveals that an unnatural disposition occurs when the disposition is illogical, and it is not one that an individual would ordinarily make absent undue influence. See In re Moretti, 69 Mass.App.Ct. 642, 657 (2007) (holdingthat a sudden and dramatic change in an estate plan to leave the estate to a new acquaintance instead of a longtime friend who provided care was an unnatural disposition); Maimonides Sch. v. Coles, 71 Mass.App.Ct. 240, 256 (2008) (holding change of beneficiary from charity to niece and her husband not unnatural because they provided substantial care and comfort through terminal illness and were closest family).
*472 The court may look to an individual's course of conduct through the years with regard to properly transfers and estate planning to ascertain whether the disposition is unnatural. See Paine v.- Sullivan, 79 Mass.App.Ct. 811, 817 (2011) (holding that a will excluding adopted daughter not unnatural where le-gator customarily acceded to predeceased wife’s wishes concerning estate planning and adopted daughter had falling out with predeceased wife). Here, the previous dealings between D’Amico and his family make clear that the transfer was a completely natural one for him to make. Throughout his life D’Amico has provided access to housing for his adult daughters, either as outright transfers of properly or as rent-free living arrangements, including Anna. D’Amico’s desire to have Anna’s children live next door and his efforts to ascertain the viability of this option strongly suggests that the transfer to Anna of the properly was a natural disposition. The fact that D’Amico’s 2009 will called for Anna to receive the Swifts Beach Road property is an even clearer indicator that the deed transfer was a natural disposition. If Anna was to receive the property eventually, it would not be unnatural for D’Amico to want his daughter to receive this gift during his life. As D’Amico has not established that the transfer of the Swifts Beach Road property was an unnatural disposition, his undue influence claim fails. However, the court will nonetheless address the remaining factors.
(2)Susceptibility to Undue Influence
Important considerations in determining susceptibility are cognition, decision making skills, and whether an individual is isolated from others who may deter or thwart an opportunist. Hernon v. Hernon, 74 Mass.App.Ct. 492, 498 (2009) (upholding judge’s finding of susceptibility in part because testator was isolated and prevented by influencing party from receiving calls); Rostanzo v. Rostanzo, 73 Mass.App.Ct. 588, 606 (2009) (holding individual not susceptible on reasoning that individual “was an active and experienced businessman in full command of his affairs who was neither ill, dependent, nor enfeebled at the time of the execution of his will”); In re Moretti, 69 Mass.App.Ct. at 656 (noting that improper use of money or property by third person is evidence of susceptibility).
D’Amico has not established that he was susceptible to undue influence at the time of the transfer. The undisputed evidence is that D’Amico is an experienced businessman who has significant experience with real estate transactions. Furthermore, despite being hospitalized, D’Amico maintained his mental faculties and judgment at the time of the deed transfer. This much is apparent from the medical records presented at trial, which reflect that D’Amico was alert, oriented, and not confused on the day of the transfer. Neither was D’Amico isolated so as to make him susceptible to influence. See In re Moretti, 69 Mass.App.Ct. at 655 (“Isolating the decedent is an off-cited tactic of those targeting elderly and dependent individuals, in order to gain the opportunity to influence favorable bequests”). Family members other than Anna visited D’Amico in the hospital, including Mrs. D’Amico, who was present during the deed transfer. Additionally, D’Amico placed 139 phone calls during his stay in the hospital and had access to his own cell phone. D’Amico also had an opportunity to express any concerns with independent hospital personnel that witnessed the signing of the deed. Based upon these considerations, the court finds that D’Amico was not susceptible to undue influence.
(3)Opportunity to Exercise Undue Influence
Likewise, D’Amico has not established that Anna had the opportunity to exercise influence. Indeed, the evidence reflects that D’Amico initiated all the conversations with family members regarding the transfer and use of 73 Swifts Beach Road to Anna. While Anna and her family were living with D’Amico during the summers, Anna was not living with her father alone and D’Amico was not dependent upon Anna. See Hernon, 74 Mass.App.Ct. at 499 (holding that caretaker had opportunity to exercise undue influence because he lived with the dying testator during the last months of his life). Furthermore, Anna had no opportunity to exercise undue influence in the hospital setting, with other individuals from the family and/or hospital staff consistently present.
(4)Exercise of Influence in Fact
D’Amico has presented no evidence that Anna actually exercised undue influence on him. D’Amico merely rests on his assertion that he has no memory of what transpired at the hospital. As discussed above, the court discredits D’Amico’s testimony, but even if D’Amico had no memory, this would still be insufficient to establish this factor. See Neill v. Brackett, 234 Mass. 367, 370 (1920) (“Mere suspicion, surmise, or conjecture are not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence”). Accordingly, D’Amico has not met his burden as to this element.
Conclusion
For the reasons stated above, Judgment is ORDERED for the defendant Anna MacMillan. It is further DECLARED that the quitclaim deed transferring the property at 73 Swifts Beach Road, Wareham, Massachusetts from Giuseppe D’Amico to Anna Mac-Millan on August 17, 2010 is valid, quiet title of the defendant Anna MacMillan.

Wüliam MacMillan had worked for D’Amico at Imperial Pizzeria in Brighton, for approximately one year prior to the relocation to Florida.

Josephine inherited all monies, personal property and real property to include 4950 Lake Cecile Drive. The court infers that Donna did not inherit property because she had already received 4886 Lake Cecile Drive, where she now resides.

The court questions whether the terms of D’Amico’s will are enforceable Nonetheless, his will corroborates the fact that he wants Anna and her children to own 73 Swifts Beach Road.

Donna (married name Eddy) is an attorney. Josephine is a paralegal who works in Donna’s law office.

There was no evidence to suggest that family members, to include his granddaughter Daniella and her husband, were ever asked or consulted about D’Amico’s plans regarding then-residences.

For fiduciary status to exist here, where none of the traditional basis for a confidential relationship are present (i.e. trustee-beneficiary, executor-legatee, attorney-client, guardian-ward), there must be a level of dependence on another’s judgment in business or property affairs that amounts to more than just mere respect or trust in another’s judgment Bruno v. Bruno, 384 Mass. 31, 33 (1981); Markeü v. Sidney B. PJiefer Found., Inc., 9 Mass.App.Ct. 412, 443-44 (1980). The fámilial relationship between D’Amico and Anna is alone insufficient to establish a confidential/fiduciaiy relationship. See Markeü, 9 Mass.App.Ct. at 444. D’Amico was in full command of his business and property affairs and was not dependent on Anna’s guidance, therefore, there was no confidential relationship warranting a shift in the burden of proof.